**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

CARMEN ATTANASIO, LYNN MARIE
POTOSKI, and DENISE GAITERI, on
their own behalf and for all others similarly
situated,

      Plaintiffs,

CIVIL ACTION NO. 3:11-CV-582

(JUDGE CAPUTO)

COMMUNITY HEALTH SYSTEMS, INC.,
WYOMING VALLEY HEALTH CARE
SYSTEM and WILKES-BARRE
HOSPITAL CO., LLC,

      Defendants.

## <u>MEMORANDUM</u>

Presently before the Court is the Defendants' Motion to Dismiss the Collective Action

Complaint, (Doc. 13).  In their Collective Action Complaint, Plaintiffs allege two categorical

violations of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201, *et seq*.

Defendants allege, in essence, that the Plaintiffs' Complaint contains insufficient facts and

is therefore improperly pleaded.  For the reasons stated below, the Court agrees and will

dismiss the Complaint, providing the Plaintiffs an opportunity to amend.

## I. BACKGROUND

Plaintiffs Carmen Attanasio, Lynn Marie Potoski, and Denise Gaiteri ("Plaintiffs")

bring this action pursuant to the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§

201, *et seq*.  They allege that Defendants Community Health Systems, Inc., Wyoming

Valley Health Care System, and Wilkes-Barre Hospital Co., LLC ("Defendants"), and all of

the Pennsylvania health care systems and hospitals under Defendants' control, violated the

Act through failing to compensate their employees for the time they spent working during

meal breaks and on required maintenance of their uniforms.  (Compl. ¶ 1, Doc. 1).

In regard to the named Plaintiffs, the Complaint merely alleges that, for the relevant period, they were all non-exempt employees as defined by the FLSA, and that all were "routinely damaged by Defendants' failure to provide all proper compensation for time [they] spent engaged in meal break work and uniform maintenance work." (*Id.* at ¶¶ 5-7). Beyond that, the Complaint does not elaborate as to the positions those Plaintiffs held, nor the exact locations in which they worked.

As for the Defendants, the Complaint avers that Defendant Community Health Systems, Inc. ("CHS") was an employer as defined by the Act,[1] and that "on its own or through its affiliates, owns or operates more than 126 hospitals in 29 states, including the Wyoming Valley Health Care System, its component entities and nine other healthcare systems in Pennsylvania." (*Id.* at ¶ 8).  It further states that Defendant Wyoming Valley Health Care System ("WVHCS")  is also an employer as envisioned by the Act.  (*Id.* at ¶ 9). Finally, Plaintiffs' Complaint alleges that Defendant Wilkes-Barre Hospital Co., LLC ("WBHC") is "owned, operated and/or controlled by WVHCS and operates Wilkes-Barre General Hospital" and that it too is an employer as defined by the Act.  (*Id.* at ¶ 10).  As such, Plaintiffs claim that "Plaintiffs and the Class members, regardless of their job title or location, had shared employers" and that the Defendants "jointly formulated, approved, and controlled the improper practices described in [their] Complaint, and are jointly responsible

---

[1]"'Employer' includes any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency, but does not include any labor organization (other than when acting as an employer) or anyone acting in the capacity of officer or agent of such labor organization."  29 U.S.C. § 203(d).

for the improper practices described [in the Complaint]." (*Id.* at ¶¶ 17(c), 13).  As such, Plaintiffs bring two separate classes of claims against the collective Defendants.[2]

The first proposed class is the "meal break work sub-class."[3]  There, the Plaintiffs complain that they were wrongfully underpaid for their time spent working "during roughly 95% of their unpaid meal breaks each month." (*Id.* at ¶ 28).  Specifically, Plaintiffs allege that the Defendants faltered in their "obligat[ion] to ensure that Plaintiffs and the Class members were completely relieved from all work-related duties during each of their unpaid meal breaks." (*Id.* at ¶ 26).  As this time spent working apparently went unrecorded, and that the Defendants allegedly knew as much, the Plaintiffs claim that this was a willing FLSA violation.  (*Id.* at ¶ 35).

The second class, styled as the "uniform maintenance work sub-class,"[4]  complains that Plaintiffs were left uncompensated for roughly two to three "hours of unpaid uniform

---

[2]The Act provides for such collective action: "An action to recover . . . may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."  29 U.S.C. § 216(b).

[3]"[T]he 'meal break work sub-class' is defined to include all Pennsylvania residents employed by Defendants, their subsidiaries, or their affiliated companies between March 28, 2008 and the present who were suffered or permitted to perform more than *de minimis* meal break work for Defendants' benefit, but who were not properly compensated for this work." (Compl. ¶ 1, Doc. 15).  Such "more than *de minimus* meal break work" includes, but is not limited to, "responding to emergency situations, responding to supervisors' instructions, providing patient care, managing hospital patients and visitors, performing lab work, performing maintenance work, performing cleaning work and guarding or surveilling hospital facilities."  (*Id.* at ¶ 16).

[4]"[T]he "uniform maintenance work sub-class" is defined to include all Pennsylvania residents employed by Defendants, their subsidiaries, or their affiliated companies between March 28, 2008 and the present who were suffered or permitted to perform more than *de minimis* uniform maintenance work for Defendants' benefit, but who were not properly compensated for this work." (Compl. ¶ 1, Doc. 15).

maintenance work each week separate and apart from their regular household laundry or clothing maintenance chores." (*Id.* at ¶ 40).  This uncompensated time Plaintiffs allege was a result of Defendants' practices and policies, that the Defendants knew about the existence of this extra labor since  they "regularly encouraged, instructed, suffered and permitted Plaintiffs and the Class members to perform this work and observed the results of this work on a regular basis." (*Id.* at ¶¶ 40-43).  As such, Plaintiffs contend that this was also a willful violation of the FLSA.  (*Id.* at ¶ 47).

Plaintiffs are seeking a list of names of potential Class members and the authorization to issue notice to those individuals.  Moreover, in seeking judgement in their favor, Plaintiffs request compensatory damages, pre-judgment interest, liquidated damages, attorney's fees and costs as well as equitable and injunctive relief.  Plaintiffs claim that all named parties are members of both sub-classes, and that all Plaintiffs and class members were subjected to the same meal break and uniform maintenance policies and systems. Plaintiffs believe the Class of similarly-situated employees could potentially include several hundred members.

Defendants collectively move to dismiss the Complaint on the grounds that it is insufficiently pleaded, and in the alternative, that the requested relief is improper.  (Mot. Dismiss, Doc. 13).  Specifically, Defendants allege that the named Plaintiffs have failed to properly allege the existence of an employment relationship between any of the parties, and that there are no specific allegations that any of the Plaintiffs ever worked more than forty hours per week or approximate the amount of any unpaid overtime owed.  The motion has been fully briefed and is ripe for review. For the reasons explained below, the Court will grant the Motion to Dismiss.

## II. DISCUSSION

### A. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted.  When considering a Rule 12(b)(6) motion, the Court's role is limited to determining if a plaintiff is entitled to offer evidence in support of their claims.  *See Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974).  The Court does not consider whether a plaintiff will ultimately prevail.  *See id.*  A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim.  *See Gould Elecs. v. United States,* 220 F.3d 169, 178 (3d Cir. 2000).

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a). The statement required by Rule 8(a)(2) must give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555).  Detailed factual allegations are not required. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). However, mere conclusory statements will not do; "a complaint must do more than allege the plaintiff's entitlement to relief."  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211.  Instead, a complaint must "show" this entitlement by alleging sufficient facts. *Id.*  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).

As such, the inquiry at the motion to dismiss stage is "normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the

complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element, *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).

In deciding a motion to dismiss, the Court should consider the allegations in the complaint, exhibits attached to the complaint, and matters of public record. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). The Court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. *Id.* The Court need not assume the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 & n.13 (3d Cir. 1998), or credit a complaint's "'bald assertions'" or "'legal conclusions,'" *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)).

6

**B. Plaintiffs' Pleadings Under the FLSA**

The Defendants argue that the Plaintiffs' Complaint "plainly lacks the factual 'heft' necessary to show more than the mere possibility that Defendants violated the FLSA." (Br. Supp. Mot. Dismiss 6, Doc. 6). More specifically, they allege that the Complaint wholly fails to meet the pleading standards set out above by the Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009).

The FLSA requires compensation for each hour worked based on the minimum wage, 29 U.S.C. § 206(a), and overtime compensation for each hour worked beyond the forty-hour workweek. 29 U.S.C. § 207(a)(1). To recover damages under the Act, and in order to state a claim, the Act requires a Plaintiff to show that "(1) the defendant was 'engaged in commerce' as that phrase is defined by the FLSA; (2) he was an 'employee' as defined by the FLSA; and (3) he worked more than forty hours in a week but was not paid overtime compensation for the hours worked in excess of forty." *Mell v. Gnc Corp.*, 2010 U.S. Dist. LEXIS 118938 at *15 (W.D. Pa. Nov. 9, 2010).

Additionally, "[i]Inclusion of class allegations does not relieve a plaintiff of alleging that she has suffered an injury in fact, fairly traceable to the challenged action of the defendants, that may be redressed by a decision in her favor." *Cavallaro v. UMass Memorial Health Care Inc.*, No. 09-40152, 2011 WL 2295023 at *2 (D.Mass June 8, 2011)(citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, (1992)). The standing requirements are not relaxed merely because of the existence of a class action. *Id.* at *6.

**1. Failure to Allege Employment**

The Complaint alleges simply that each named Plaintiff is an employee as defined by the Act, and conversely, that each Defendant is an employer as defined by the Act. In

as much, the Defendants argue that the Complaint should be dismissed as it fails to factually allege an employment relationship between any of the Plaintiffs and any of the Defendants.

The Act defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C. § 203(d), and an "employee" as "any individual employed by an employer," 29 U.S.C. § 203(e)(1).  The courts have afforded these definitions a broad reading, in part to "further[] the remedial purposes of the FLSA."  *Cavallaro v. UMass Memorial Health Care Inc.*, No. 09-40152, 2011 WL 2295023 at *3 (D.Mass June 8, 2011) (citations omitted).  The Third Circuit has promulgated a six-factor balancing test to guide the district courts in weighing facts in order to determine whether an employer-employee relationship exists:

> (1) the degree of the alleged employer's right to control the manner in which the work is to be performed; (2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; (3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers; (4) whether the service rendered requires a special skill; (5) the degree of permanence of the working relationship; and (6) whether the service rendered is an integral part of the alleged employer's business.

*Bamgbose v. Delta-T Group, Inc.*, 684 F. Supp. 2d 660, 669 (E.D. Pa. 2010) (citing *Martin v. Selker Bros., Inc.*, 949 F.2d 1286, 1293 (3d Cir. 1991).

An employee may have multiple employers for the purposes of the FLSA, and depending on the particular facts, those employers may be jointly responsible for compliance with the Act's provisions.  29 C.F.R. § 791.2(a); *Davis v. Abington Memorial Hosp.*, Nos. 09–5520, 09–5533, 09–5548, 09–5549, 09–5550, 09–5551, 2011 WL 4018106 at *3 (E.D. Pa. Sept. 8, 2011).  Determining the existence of such a joint employment relationship considers the "'real economic relationship' between the employee, employer,

and putative joint employer." *Lepkowski v. Telatron Mktg. Group*, 766 F. Supp. 2d 572, 577 (W.D. Pa. 2011) (citation omitted).  Similarly, individual companies can also be grouped together as a single-employer for the purposes of the Act where they are "so interrelated that they constitute a single employer."   *Davis*, 2011 WL 4018106 at *3 (citing *Torres–Negron v. Merck & Co., Inc.*, 488 F.3d 34, 41 (1st Cir.2007)).

    *Davis v. Abington Memorial Hospital* presented a nearly analogous situation to the instant case.  2011 WL 4018106 at *3.  The alleged employers in the consolidated complaints ranged from sixty-six (66) to two hundred and eighteen (218).  *Id.*   The Defendants argued that the Plaintiffs failed to adequately plead the existence of an employer-employee relationship, and that court agreed–noting that the "bounty of potential employers notwithstanding, Plaintiffs somehow fail to allege facts establishing a single employer-employee relationship."  *Id.*  Specifically, the plaintiffs had neglected to mention where exactly they reported to, who paid them, and who actually supervised them.  *Id.*

    Those plaintiffs, however, maintained that such specific details were immaterial as to the named plaintiffs since each employer would be liable to a member of the collective class.  *Id.* That court disagreed, first ruling that the plaintiffs had "taken the concept of 'joint employer' several steps too far."  *Id.*  Specifically, it held that the plaintiffs failed to offer any factual support for their conclusory pleading that they were "economically dependent" on all eighty-six organizations without "alleging the basic terms of the primary employment-employer relationship."  *Id.*  As such, that court easily determined that the single-employer theory of liability was also improperly plead.  *Id.* at *4 ("Plaintiffs' failure to identify that any single defendant as their employer is fatal.").  "In short, in order to proceed on their FLSA claim, Plaintiffs must include basic information about the named Plaintiffs."  *Id.*

Across the federal courts, there is strong agreement as to this basic proposition. *Cavallaro v. UMass Memorial Health Care Inc.* reached a very similar conclusion where "[w]ith respect to defendants' employer status, the complaint contains at least four conclusory legal assertions," including the statement that "at all relevant times, plaintiffs were employees under the FLSA." 2011 WL 2295023 at *3 (D.Mass June 8, 2011). In exactly the same fashion as *Davis*, the court in *Cavallaro* concluded there were insufficient averments as to a joint-employer theory as the complaint did "not contain a single factual allegation connecting plaintiffs with any of the corporate defendants." *Id.* at *4. Specifically:

> Nor have plaintiffs alleged when they began working, what position they hold, or which defendants supervise their daily work schedules. Plaintiffs have alleged no facts as to the location at which they work, what they do at work, or what tasks they perform. They have not alleged that any of the corporate entities make decisions regarding their compensation or method of employment. And they have not alleged that their employment records are maintained by any of the defendants. In light of their failure to allege any specific facts in support of a theory of joint employment, there is no plausible basis for an inference that all of the defendants caused the alleged FLSA violations that plaintiffs suffered.

*Id.* That court also found the complaint lacking as to the single employer theory, finding that the plaintiffs had failed to put forth "sufficient facts to suggest that even one of the defendants is their employer." *Id.* at *5.

Similarly, in *Ping Chen v. Domino's Pizza, Inc.*, that court dismissed a complaint where there was "nothing more than a 'formulaic recitation of the elements of the cause of action." No. 09-107, 2009 WL 3379946 at *5 (D.N.J. Oct. 16, 2009) (citing *Twombly*, 127 S.Ct. At 1964-65). That court found not a "single factual allegation indicating that Domino's had any authority or control over their employment conditions." *Id.* at *4. As such, it could not find that an employment relationship had been pleaded, and it dismissed the complaint.

The Complaint in the instant case fails for the same reasons, as the Plaintiffs similarly fail to plead "the basic terms of the primary employment-employer relationship." *Davis*, *supra*, 2011 WL 4018106 at *3.  In fact, the Complaint merely alleges that, for the relevant period, the named Plaintiffs were all non-exempt employees as defined by the FLSA, and that all were "routinely damaged by Defendants' failure to provide all proper compensation for time she spent engaged in meal break work and uniform maintenance work." (Compl. ¶¶ 5-7, Doc. 1).  The Plaintiffs wholly fail to plead where exactly they work, what it is they do, how long they have done it for, and other basic facts that would add credence to their bare legal recitations.  Moreover, it merely avers, in a conclusory fashion, that each Defendant is "an employer as defined in the Act." (Id. at ¶¶ 8-10).  Such pleadings constitute a mere "formulaic recitation of the elements of [the] cause of action" and are insufficient to maintain a cause of action.  *Twombly*, *supra*, 127 S. Ct. at 1964-65.  Such bare legal assertions, without more, are not entitled to the assumption of truth.  *See Iqbal*, *supra*, 129 S.Ct. at 1950.

As in *Ping Chen*, since no Defendant is specifically implicated in the Complaint, it is impossible for the Court to conclude that there are any proper claims leveled against any of the listed Defendants.  Of course, even though the Plaintiffs are pleading as a Collective Class Action, this does not relieve them of their burden of making specific, factual allegations.  That the Defendants allegedly "operated all of the Pennsylvania health care systems and hospitals under their ownership, management and control as part of an integrated, comprehensive, consolidated health care delivery system," (Compl. ¶ 11, Doc. 1), does not alter this analysis, either.  Plaintiffs must still plead their specific relationship and grievances with the parties according to pleading standards.  "Threadbare recitals of

11

the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

In failing to articulate any the details of the arrangement between the Plaintiffs and Defendants, the Court cannot resolve any quantum of plausibility from the Plaintiff's claims. Moreover, the Court notes that this is not only necessary as a legal matter, but as a practical concern as well where the Plaintiffs are seeking to represent a broad class with notice to be distributed.  As such, the Complaint will be dismissed.

### 2. Failure to Allege the Existence of Unpaid Overtime

The Defendants further allege that the Plaintiffs have failed to include the essence of their claim–the amount of overtime each Plaintiff is owed.  In particular, Defendants point to an absence of facts regarding when exactly such time was potentially accrued, and the overall amount of the estimated overtime owed.  (Doc. 15 at 19).

The instant Complaint asserts that the Plaintiffs "routinely worked more than 40 hours per week and [were] routinely subjected to the scheduling, timekeeping and pay policies and practices described herein." (Compl. ¶¶ 5-7, Doc. 1).  As such, Plaintiffs respond that they have provided enough information to enable the Court to calculate the amount of overtime owed.  Specifically, Plaintiffs aver that from their estimations that Plaintiffs were made to work 95% of their meal breaks, and two-to-three hours each week on uniform maintenance, the Court could, assuming a standardized annual schedule, find that each Plainitiff was entitled to a sum of 351 to 403 hours of uncompensated time per Plaintiff per year.  (Doc. 18 at 8).

The Court disagrees.  As an initial matter, it is unclear whether each Plaintiff would be entitled to such additional time at their standard or overtime pay rate.  Moreover, it is not

clear from the Complaint as to the period in which each of the named Plaintiffs worked for any of the Defendants and would be potentially entitled to such extra compensation. Analogous to the above analysis, without knowing more about these named Plaintiffs' express employment circumstances, it is not possible for the Court to compute the time owed.

While highly specified figures need not be pleaded, Plaintiffs must be "able to estimate the time periods in which they worked without proper overtime compensation." *Mell v. GNC Corp.*, No. 10–945, 2010 WL 4668966, at * 8 (W.D.Pa. Nov.9, 2010). Precise records as to days and hours owed are not necessary, but instead "a just and reasonable inference that in their capacity as employees . . . they worked a concrete number of hours for which they were improperly compensated." *Beaulieu v. Vermont*, No. 2:10-cv-00032, 2010 WL 3632460 at *5 (D. Vt. Aug. 5, 2010) (finding individualized determinations as to each Plaintiff based on a weekly estimate sufficient to meet the pleading standards). Of course, "[t]he critical component of a complaint alleging violations of Section 207 is an approximation of the number of unpaid weekly overtime hours worked over the employment period." *Id.* "At a minimum, it must set forth the approximate number of unpaid regular and overtime hours allegedly worked." *Nakahata v. New York-Presbyterian Healthcare System, Inc.*, Nos. 10 Civ. 2661(PAC), 10 Civ. 2662(PAC), 10 Civ. 2683(PAC), 10 Civ. 3247(PAC), 2011 WL 321186 at *4 (S.D.N.Y. Jan. 28, 2011).

As such, the Court finds this aspect of the Complaint similarly incomplete in pleading facts sufficient to support a FLSA claim. The Court does not require exact determinations, but the instant Pleadings are insufficient to determine what, if any, any of the named Plaintiffs are potentially owed. For each of the three named Plaintiffs, the Complaint only

13

claims that each were harmed over the "relevant period." (Compl. ¶¶ 5-7, Doc. 1). Even assuming these parties did share the exact same "relevant period," the Pleadings further fail to indicate whether any one Plaintiff was harmed more than others. In other words, it may be the case that one of more of the named Plaintiffs was compensated for at least some of the extra time worked–it is impossible to tell.

A FLSA pleading requires some coherent approximation of the time owed. Though the instant Pleadings do make globalized assertions as to the general loss suffered by the Plaintiffs, the facts alleged do not even attempt to offer any sort of individualized amount. Therefore, as the Complaint fails to include this necessary element of the Plaintiff's claim, the Motion to Dismiss will be granted.

## C. Plaintiffs' Requested Relief

Defendants alternatively claim that Plaintiffs are seeking improper relief in the form of unspecified compensatory damages, concurrent pre-judgment interest and liquidated damages, and injunctive relief. In their Prayer for Relief, Plaintiffs appear to simultaneously request compensatory damages, pre-judgment interest, liquidated damages, reasonable attorney's fees and costs and equitable and injunctive relief. (Compl. at 14, Doc. 1). The Act provides that "[a]ny employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). While I will dismiss the Plaintiffs' Complaint for the reasons stated above, I will briefly address the Defendants' specific argument below in regard to damages.

Defendants first argue that the Court should dismiss the Plaintiffs' "unspecified

demand for compensatory damages to the extent Plaintiffs are seeking recovery of compensatory damages for pain and suffering or emotional distress." (Doc. 15 at 22). However, the Court finds this issue is a non-starter as there is no indication that Plaintiffs are seeking any compensatory damages other than those expressly provided by the Act.

The Act does not allow, however, for recovery for both liquidated damages and pre-judgment interest. *Gonzalez v. Bustleton Servs.*, No. 08-4703, 2010 WL 1813481 at *2 (E.D. Pa. May 5, 2010) ("It is well-settled in FLSA jurisprudence that a plaintiff cannot recover both liquidated damages and prejudgment interest because both serve the same purpose, namely to compensate employees for losses caused by delayed receipt of wages they are due." (citations omitted)). To the extent that Plaintiffs are pleading both forms of damages, they argue that they are merely pleading in the alternative. (Doc. 18 at 10). While not express on the face of the Complaint, the Court notes that such a pleading is acceptable. Of course, Plaintiffs "may state as many separate claims or defenses as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(3); *see e.g. Flynn v. Stonegate Mortg. Corp.*, No. 10-cv-2058-JAR-KSG, 2010 U.S. Dist. LEXIS 90878 at *17-18 (D. Kan. Aug. 30, 2010) (granting a motion to dismiss to the extent that the complaint sought both liquidated damages and pre-judgment interest but sustaining the complaint to the extent it plead them in the alternative). Therefore, to the extent that these two conflicting forms of relief are requested, the Court notes that they are not fatal to Plaintiffs' Complaint.

Finally, the Defendants take issue with the Plaintiffs seeking equitable and injunctive relief and contend that such injunctive relief can only be obtained by the Secretary of Labor. *Balgowan v. New Jersey*, 115 F.3d 214, 218 (3d Cir. 1997) ("Only the Secretary of Labor may initiate an action for injunctive relief under the FLSA."); *Flynn*, *supra*, 2010 U.S. Dist.

LEXIS 90878 at *18 ("Although the Secretary of Labor is authorized to seek injunctive relief under the FLSA for violations of its overtime and wage provisions, private parties are not so authorized unless they are seeking injunctive relief under the anti-retaliation provision of the FLSA."). As the Plaintiffs are not seeking relief under the Act's retaliatory provisions, the Court notes that such injunctive relief is not appropriate.

For the reasons stated above the Court will grant the Defendants' Motion to Dismiss. Of course, "if a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. County of Allegheny*, 515 F.3d 224, 245 (3d Cir. Pa. 2008) (citation omitted). Furthermore, Federal Rule of Civil Procedure 15(a) directs the Court to "freely give leave when justice so requires." While the Court acknowledges that the Plaintiffs have requested leave to amend (Doc. 18 at 7 n.3), this principle applies even in situations where Plaintiffs do not seek such a leave to amend, though a court may ultimately dismiss if the Plaintiff does not ultimately submit such an amended pleading. *Phillips*, 515 F.3d at 245. Therefore, the Court will afford Plaintiffs an opportunity to amend their Complaint.

### III. CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss Plaintiffs' Collective Action Complaint (Doc. 1) will be granted. Plaintiff will be given twenty-one (21) days in which to file an amended complaint. Failure to do so will result in a dismissal of this action. An appropriate order follows.

| | |
|---|---|
| October 20, 2011 | /s/ A. Richard Caputo |
| Date | A. Richard Caputo |
| | United States District Judge |

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CARMEN ATTANASIO, LYNN MARIE POTOSKI, and DENISE GAITERI, on their own behalf and for all others similarly situated, | CIVIL ACTION NO. 3:11-CV-582 |
| Plaintiffs, | (JUDGE CAPUTO) |
| COMMUNITY HEALTH SYSTEMS, INC., WYOMING VALLEY HEALTH CARE SYSTEM and WILKES-BARRE HOSPITAL CO., LLC, | |
| Defendants. | |

## ORDER

**NOW**, this 20th day of October, 2011, **IT IS HEREBY ORDERED** that

Defendants' Motion to Dismiss Plaintiffs' Collective Action Complaint (Doc. 13)  is

**GRANTED** and the Complaint (Doc. 1) is **DISMISSED**.

The Plaintiffs have twenty-one (21) days from the date of this Order to file an

amended complaint.  Failure to do so will result in the dismissal of this case.


 /s/ A. Richard Caputo
A. Richard Caputo
United States District Judge