# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

LYNN POTOSKI and DENISE GAITERI, et al.,

    Plaintiffs,

    v.

WYOMING VALLEY HEALTH CARE SYSTEM and WILKES-BARRE HOSPITAL COMPANY, LLC,

    Defendants.

CIVIL ACTION NO. 3:11-cv-582

(JUDGE CAPUTO)

## **MEMORANDUM**

Presently before the Court is a Motion for Order Authorizing Notice to Similarly Situated Persons Pursuant to 29 U.S.C. § 216(b) (Doc. 60) filed by Plaintiffs Lynn Marie Potoski and Denise Gaiteri (collectively, "Plaintiffs").¹ In their motion, Plaintiffs move to conditionally certify this case as a collective action under the Fair Labor Standards Act of 1938, 29 U.S.C. § 216(b) ("FLSA"). Plaintiffs allege that they were employed by Defendants Wyoming Valley Health Care System ("WVHCS") and Wilkes-Barre Hospital Company, LLC (collectively, "Defendants"). (Am. Compl., Doc. 24, ¶ 17.) According to Plaintiffs, WVHCS owned and operated three facilities in the area, Wilkes Barre General Hospital ("WBGH"), First Hospital, and CHOICES until April 2009.² *Id.* at ¶ 9. Plaintiffs, on behalf of

---

¹ The parties agreed to remove former Plaintiff Carmen Attanasio from the action, and his allegations were not used in support of Plaintiffs' motion. (Doc. 62, 1, n.1.)

² Plaintiffs contend that in April 2009, Defendant WVHCS sold the majority of its assets but has continued to exist as a charitable health foundation and remains contractually obligated to indemnify the current owner for liabilities resulting from this litigation. (Am. Compl., Doc. 24, ¶ 9; Doc. 62, 2.)

themselves and those similarly situated, allege that Defendants violated the FLSA by knowingly suffering or permitting employees to perform meal break and uniform maintenance work without proper compensation. (Am. Compl., Doc. 24, ¶¶ 30, 44.) Accordingly, Plaintiffs propose certification of two subclasses: (1) a "meal period work class" composed of "all persons who have worked as full-time, hourly employees at Wilkes-Barre Hospital, First Hospital, and CHOICES . . . during any workweek in the three years preceding this Court's conditional certification ruling" (Doc. 62, 3, n. 2); and (2) a "uniform maintenance class" composed of "all persons who have worked as hourly uniformed employees at Wilkes-Barre Hospital . . . during any workweek in the three years preceding this Court's conditional certification ruling" (Doc. 60, 7, n. 5). The Court will grant Plaintiffs' motion and will conditionally certify the meal period work and uniform maintenance classes because Plaintiffs have made a modest factual showing that the putative class members are similarly situated to the Plaintiffs.

**I. Background**

Plaintiffs assert that employees at WBGH, First Hospital, and CHOICES were governed by a common policy requiring them to perform any and all extra work necessary for the operation of their department or facility. (Doc. 62, 3.) Plaintiffs claim that employees had a common entitlement to receive an unpaid thirty (30) minute meal break after working continuously for six or more hours, and that employees kept their time on a common timekeeping system that automatically deducted a thirty (30) minute meal period from each shift of more than six hours, regardless of whether employees actually received their uninterrupted meal periods. (Doc. 62, 4.) In addition, Plaintiffs claim that Defendants employed a written time card "exception" procedure which "ostensibly permitted" employees to recover wages owed for missed or shortened meal periods, but that this procedure was

"so unwieldy and confusing that employees rarely took advantage of it" and Defendants' managers and supervisors discouraged them from using it. *Id.* Overall, Plaintiffs claim that they "were suffered or permitted to work during 95% of their unpaid meal periods" yet because of the "flawed 'exception'" procedure, they only received "a total of 31 period 'exceptions' over the past five years." (Doc. 62, 6.) Plaintiffs further contend that during the relevant period Defendants knew that Plaintiffs and the proposed class members regularly worked during unpaid meal periods because Defendants' managers and supervisors regularly encouraged and instructed meal period work to be done, regularly observed them doing such work, and did not provide staffing to ensure that Plaintiffs and the proposed class members could regularly take uninterrupted meal periods. (Doc. 62, 6.) In addition, Plaintiffs assert that Defendants failed to sufficiently track the meal period work that employees were performing or pay them for such work. (Doc. 62, 7.)

With respect to uniform maintenance work, Plaintiffs contend that employees were governed by common policies requiring them to wear certain articles of clothing to work and to "maintain a professional, business-like appearance while on duty and to meet high standards for personal hygiene and cleanliness." (Doc. 62, 7.) Plaintiffs assert that they were not allowed to maintain their uniform components "on the clock" or at their work sites. (Doc. 62, 8.) To comply with this policy, Plaintiffs claim that they spent about eight (8) hours each month washing, spot cleaning, drying, and ironing their work uniforms. (Doc. 62, 8.)

Plaintiffs allege that Defendants knew that employees regularly performed uniform maintenance work "off the clock" because employees did not have access to washing and ironing facilities and were not given time to wash or maintain their uniform components at work. (Doc. 62, 9.) They also allege that they regularly complained to supervisors about this work and their supervisors regularly saw the results, encouraged, and instructed such work to be done. (Doc. 62, 9.)

3

In support of their motion for conditional certification, Plaintiffs present the following evidence:

(1) Deposition Testimony of Plaintiff Lynn Potoski (Doc. 62, Ex. A);

(2) Deposition Testimony of Plaintiff Denise Gaiteri (Doc. 62, Ex. B);

(3) Deposition Testimony of HR Representative Lisa Goble (Doc. 62, Ex. C);

(4) Plaintiffs' Rule 26(a)(1) Initial Disclosures (Doc. 62, Ex. D);

(5) Break/Meal Periods Policy D.13 (Doc. 62, Ex. E);

(6) Workweek/Overtime Policy D.5 (Doc. 62, Ex. F);

(7) Wilkes-Barre Employee Handbook (Doc. 62, Ex. G);

(8) Exception Form (Doc. 62, Ex. H);

(9) Plaintiffs' Exception Reports (Doc. 62, Ex. I);

(10) Uniform Color-Coding Master Sheet (Doc. 62, J);

(11) Dress Guidelines Policy 60.2 (Doc. 62, K);

(12) Wyoming Valley Employee Handbook (Doc. 62, Ex. L).

In opposition to Plaintiffs' motion, Defendants present the following evidence:

(1) Declaration from Goble (Doc. 66, Ex. A);

(2) Co-Worker Declarations (Doc. 66, Ex. B);

(3) Plaintiff Gaiteri Deposition (Doc. 66, Ex. C);

(4) Plaintiff Potoski Deposition (Doc. 66, Ex. D);

(5) Goble Deposition (Doc. 66, Ex. E);

(6) Dress Policy (Doc. 66, Ex. F);

(7) Handbook (Doc. 66, Ex. G);

(8) Color-Coding Master Sheet (Doc. 66, Ex. H).

## II. Discussion

The opt-in provision of the FLSA, which allows employees to bring collective actions against employers, provides:

> An action . . . may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b). There are two requirements of this provision: (1) all plaintiffs must be similarly situated; and (2) all opt-in plaintiffs must consent in writing to be a named plaintiff. *Id.* Although the FLSA does not define the term "similarly situated," the United States Supreme Court has noted that "district courts have discretion . . . to implement [§ 216(b)] . . . by facilitating notice to potential plaintiffs." *Hoffmann–La Roche, Inc. v. Sperling*, 493 U.S. 165, 169, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989).

Courts within the Third Circuit follow a "two-step approach for deciding whether an action may properly proceed as a collective action under the FLSA." *Camesi v. University of Pittsburgh Med. Ctr.*, 729 F.3d 239, 243 (3d Cir. 2013) (citing *Zavala v. Wal–Mart Stores Inc.*, 691 F.3d 527, 535 (3d Cir.2012)). At the first stage, "the court makes a preliminary determination whether the employees enumerated in the complaint can be provisionally categorized as similarly situated to the named plaintiff. If the plaintiff carries her burden at this threshold stage, the court will 'conditionally certify' the collective action for the purposes of notice and pretrial discovery." *Symczyk v. Genesis Healthcare Corp.*, 656 F.3d 189, 192 (3d Cir. 2011), rev'd on other grounds, *Symczyk*, 133 S. Ct. 1523, 1526, 185 L. Ed. 2d 636 (2013).

At this initial stage, plaintiffs are required to make a "modest factual showing" that the proposed recipients of opt-in notices are similarly situated. *Id.* To satisfy this standard, "a plaintiff must produce some evidence, 'beyond pure speculation,' of a factual nexus

5

between the manner in which the employer's alleged policy affected her and the manner in which it affected other employees." *Id.* at 193. "In undertaking this analysis, 'the merits of the plaintiffs' claims are not addressed.'" *Scott v. Bimbo Bakeries, USA*, Inc., No. 10-3154, 2012 WL 645905, at *6 (E.D. Pa. Feb. 29, 2012) (internal citations omitted).

Following conditional certification, at the second stage, "with the benefit of 'a much thicker record than it had at the notice stage,' a court . . . then makes a conclusive determination as to whether each plaintiff who has opted in to the collective action is in fact similarly situated to the named plaintiff." *Symczyk*, 656 F.3d at 193 (3d Cir. 2011), rev'd on other grounds, *Symczyk*, 133 S. Ct. at 1526 (citing *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1261 (11th Cir. 2008)). Plaintiffs "must satisfy their burden at this second stage by a preponderance of evidence." *Zavala v. Wal Mart Stores, Inc.*, 691 F.3d 527, 537 (3d Cir. 2012).

Third Circuit Court of Appeals noted in *Zavala* that "'conditional certification' is not really a certification. It is actually 'the district court's exercise of [its] discretionary power, upheld in *Hoffmann–La Roche [Inc. v. Sperling*, 493 U.S. 165, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989)]*, to facilitate the sending of notice to potential class members,' and 'is neither necessary nor sufficient for the existence of a representative action under [the] FLSA.'" *Zavala*, 691 F.3d at 536 (internal quotation omitted).

### A. Meal Period Work Sub-Class

Plaintiffs contend that Defendants failed to properly compensate Plaintiffs and the proposed class members for work performed during meal breaks. The Employee Handbook provides that "[b]ased on the needs of the facility and the department, it may be necessary to change an employee's work schedule from time to time to meet department needs. This may include mandatory overtime . . . Your cooperation and assistance in performing such work is expected." (Doc. 62, Ex. G, 8.) It also provides that "[t]here may

6

be times that an employee may not be able to complete an uninterrupted meal break. It is the employee's responsibility to notify his/her supervisor so that timekeeping for payroll is accurate." *Id.* at 10. The Employee Handbook provides that "[a]ll overtime must be approved in advance." (Doc. 62, Ex. G, 28.) Policy 30.1 explains that "[o]ne half (½) hour will be provided for meal time and is not to be considered as part of the employee's regular hours of work." (Doc. 62, Ex. E, 5.) It also provides that "[f]or employees who work in a department that, due to patient/client schedules, an employee may not be afforded an uninterrupted meal period, these employees will be compensated for all hours worked." *Id.*

With respect to meal break exceptions, the Employee Handbook provides that "[i]f an employee is unable to take his/her scheduled meal period due to work related issues, the employee will be paid for this time. However, you must notify your supervisor via department channels in order for this to be recorded." (Doc. 62, Ex. G, 29.)

With respect to the meal period "exception" procedure, Plaintiff Potoski explained in her deposition that "I'm told we're supposed to fill this thing out and nobody I work with has any clue what we're supposed to do; if we're supposed to fill that form out or we're supposed to fill this form out." (Doc. 62, Ex. A, 208.) Plaintiff Potoski stated "again, I'm completely confused on what I'm supposed to fill out." (Doc. 62, Ex. A, 212.) Similarly, Plaintiff Gaiteri stated in her deposition that "I have talked to several people over the years and we did have that Kronos sheet that I spoke of to fill out for meal periods. . . . And I've also had . . . supervisors who've witnessed me eating my lunch . . . and other people in our unit eating lunch at our desk or at a side desk at our nurse's station and when I've discussed it with them, they said well, the emergency room doesn't get relief for their lunch either on a regular basis, so why– basically, why should you be any– any different than other people in the hospital." (Doc. 62, Ex. B, 124-26.)

In support of their assertion that Defendants' managers and supervisors discouraged

Plaintiffs and putative class members from seeking meal period exceptions, Plaintiff Gaiteri states that "we've been discouraged from filling [sic] them on a daily basis." (Doc. 62, Ex. B, 179.) Similarly, Plaintiff Potoski claims that "a lot of people have deferred me or deterred me from putting in these meal tickets, slips." (Doc. 62, Ex. A, 132.) With respect to whether putative class members are "similarly situated" to the Plaintiffs, Gaiteri stated "I especially know the people in the CT ICU don't fill one out every day and hand them in." (Doc. 62, Ex. B, 198.) In addition, Plaintiff Potoski stated "I know that other people on other units are not being compensated for working through meal periods" based on experience working and speaking with individuals in different locations in the hospital. (Doc. 62, Ex. A, 132-34.) Common human resource policies applied to employees of WBGH, First Hospital, and CHOICES. (Doc. 62, Ex. C, 22-23.)

Plaintiffs assert that they were suffered or permitted to work during 95% of their unpaid meal periods. (Doc. 24, ¶¶ 33, 40-41; Doc. 62, Ex. B, 127.) They also state that Defendants knew that Plaintiffs and the purported class members regularly worked during their meal periods because the common policies listed above encourage such work, and managers and supervisors regularly observed employees doing such work. (Doc. 62, Ex. A, 125-27; Ex. B, 126-27.) Plaintiffs allege that they and purported class members have spoken to supervisors about performing such work. (Doc. 62, Ex. A, 27-31; Ex. B, 55-56, 186-87.) In addition, Plaintiffs assert that Defendants knew that Plaintiffs and the purported class members regularly worked during unpaid meal periods because there was insufficient staffing to ensure employees could take meal breaks. (Doc. 62, Ex. B, 142-45.) Plaintiffs also submit documentation indicating that together, they have received a total of thirty-one (31) meal period "exceptions" over the past five years, despite their allegations that they have worked during 95% of their unpaid meal periods. (Doc. 62, Ex. I.)

In opposition to Plaintiffs' motion, Defendants filed eight declarations from Plaintiffs'

co-workers, detailing the process for payment for missed or shortened meal periods for their respective departments. *See generally* Doc. 66, Ex. B. The declarations also state disinterest in joining the litigation. *Id*. Some of the declarations address uniform maintenance practices. *Id.* Defendants also submit additional documentation and deposition testimony which calls into question the currentness and applicability of some of the policies relied on by Plaintiffs. At this initial phase of conditional certification, courts do not "reach the merits of Plaintiffs' FLSA claims or make conclusive findings." *Hively v. Allis-Chalmers Energy, Inc.*, No. 13-106, 2013 WL 5936418, at *6 (W.D. Pa., Nov. 5, 2013). Therefore, while the court "takes note" of these declarations and conflicting deposition testimony, "precedent makes clear that, in ruling on the motion for conditional certification, it is not appropriate to adjudicate plaintiffs' claims on the merits." *Williams v. Owens & Minor, Inc.*, No. 09-00742, 2009 WL 5812596, at *3 (E.D. Pa. Oct. 9, 2009). While these declarations and testimony may be very useful at the second stage of FLSA collective action certification, they do not conclusively establish here that conditional certification should be denied.

A number of cases have addressed motions for conditional certification in the health care industry regarding employer programmed automatic payroll deductions for meal period work. *See Bergman v. Kindred Healthcare, Inc.*, — F. Supp. 2d —, No. 10-191, 2013 WL 2632596, at *6 (N.D. Ill. June 11, 2013) ("There is a series of health care cases that have considered conditional certification for auto-deduct policy claims as a violation of the FLSA."). As the parties note, there are numerous decisions both granting and denying conditional certification under what appear to be similar factual circumstances. Compare *Outlaw v. Secure Health L.P.,* No. 11-cv-602, 2012 WL 3150582, (M.D. Pa. Aug. 2, 2012), *Lindberg v. UHC of Lakeside, LLC*, 761 F. Supp. 2d 752 (W.D. Tenn. 2011), *Camesi v. University of Pittsburgh Med. Ctr.*, No. 09-85J, 2009 WL 1361265 (W.D. Pa. May 14, 2009),

*Kuznyetsov v. W. Penn Allegheny Health Sys.,* No. 09–CV–379, 2009 WL 1515175 (W.D. Pa. June 1, 2009), *and Dinkel v. MedStar Health, Inc.*, 880 F. Supp. 2d 49 (D.D.C. 2012), *with Goldstein v. Children's Hospital of Philadelphia*, No. 10-CV-01190, 2012 WL 5250385 (E.D. Pa. Oct. 24, 2012), *and Saleen v. Waste Management, Inc.*, 649 F. Supp. 2d 937 (D. Minn. 2009).

In support of conditional certification, Plaintiffs rely heavily on *Outlaw v. Secure Health L.P.*, a recent decision that "granted conditional certification to healthcare workers seeking unpaid meal period and uniform maintenance wages on virtually identical facts and proof." (Doc. 62, 15.) Plaintiffs indicate that in *Outlaw*, the plaintiff, a licensed practical nurse claimed that she worked 80% of her thirty minute uncompensated meal breaks, that management encouraged her to perform meal break work, and that her employer programmed the timekeeping system to automatically deduct meal breaks from her hours worked. *Outlaw*, 2012 WL 3150582, at *1. The court granted conditional certification of a class of employees at two different care facilities based on evidence including "plaintiff's sworn declaration; common corporate policies found in employee handbooks; employee time cards; and defendants' answer." *Id* at *4.

Similarly, in *Kuznyetsov v. W. Penn Allegheny Health Sys.,* No. 09–CV–379, 2009 WL 1515175, at *5 (W.D. Pa. June 1, 2009), the court granted conditional certification of a class of employees subject to a time keeping system which automatically deducted thirty (30) minutes of time from each non-exempt employee's pay for each time an employee worked for five to six consecutive hours. *Id.* at *4. The employer's policy provided that "'[i]f the employee is required to perform any job related duties during the meal period, the time is to be paid.'" *Id.* If employees missed a meal break, they were required to inform a timekeeper of the need to cancel the automatic deduction in the manner appropriate for the

location and department. *Id.* In light of 29 C.F.R. § 785.13,[3] the court concluded that "[a]rguably, Defendants' policies shift the responsibility to the employees." *Id.* at *5. The court found evidence of this shift in responsibility "sufficient . . . to proceed with conditional certification." *Id. See also Camesi,* 2009 WL 1361265, at *4 ("Irrespective of whether or not UPMC's 'employee cancellation' policy ultimately is consistent with the FLSA, Defendants' arguable attempt to shift statutory responsibilities to their workers constitutes an 'employer policy' susceptible to challenge at this stage in the proceedings.").

In response to Plaintiffs arguments, Defendants assert that "[e]xception reporting systems of this nature are FLSA-compliant as a matter of law." (Doc. 66, 10.) Defendants further contend that where an employer has a policy that is FLSA-compliant, courts considering a motion for conditional certification require a showing that "the employer's 'common policy or uniform practice was to not follow its formal, written policy.'" (Doc. 66, 11 (citing *White v. Baptist Mem. Health Care Corp.*, No. 08-2478, 2011 WL 1883959, at *9 (W.D. Tenn. May 17, 2011.))[4] Defendants also rely on *Saleen v. Waste Management, Inc.*, No. 08-4959, 2009 WL 1664451 (D. Minn. June 15, 2009), a case involving an automatic meal break pay deduction policy, where the court denied plaintiffs' motion for conditional

---

[3] This provision states that "it is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed. It cannot sit back and accept the benefits without compensating for them. The mere promulgation of a rule against such work is not enough. Management has the power to enforce the rule and must make every effort to do so." 29 C.F.R. § 785.13

[4] Unlike the present case, *White* reflects a court's analysis regarding a motion to decertify a collective action (for which conditional certification had already been granted) as opposed to the initial phase of determining whether conditional certification should be granted in the first place. As explained above, burden of showing that other employees are "similarly situated" in response to a motion to decertify is more onerous and exacting than at the initial conditional certification phase.

certification, for the proposition that "[p]laintiffs 'must submit evidence that the reason why the employees were not compensated for [working through meal breaks] is . . . because of a corporate decision to ignore . . . published policies and refuse to pay for [working through meal breaks].'" *Id.* at *4 (internal citation omitted).

Despite *Saleen*, the Court finds the reasoning in *Outlaw, Kuznyetsov* and *Camesi*, to be more persuasive and thus agrees with Plaintiffs that they have presented sufficient evidence at the conditional certification stage to justify sending notice the meal period work class under 29 U.S.C. § 216(b). As the court explained in *Outlaw,* "[b]ecause the Department of Labor's regulations provide that employers may not avoid the payment of wages by implementing policies against the performance of work, defendants' argument to the contrary does not convince the court." *Outlaw v. Secure Health*, No. 11-cv-602, 2012 WL 3150582, at *5 (M.D. Pa. Aug. 2, 2012) (citing 29 C.F.R. § 785.13).

Defendants also argue that Plaintiffs' idiosyncratic experiences "do not amount to a policy, practice, or plan on the part of Defendants to systematically deny or deter requests for compensation for meal period work." (Doc. 66, 14.) In *Kuznyetsov*, the court responded to similar criticism, holding that conditional certification was appropriate "[a]t this initial stage [where] there is no dispute that the policies affect all non-exempt employees, regardless of job title or work location." *Kuznyetsov*, 2009 WL 1515175 at *5. The court found that "[a]ny dissimilarities" between the named plaintiffs and the proposed class members "may be reevaluated in the second stage of class certification, after discovery is complete." *Id.*

Defendant argues in the alternative that "to the extent that the Court finds that Plaintiffs have made a 'modest factual showing' that some group of their co-workers have been denied or deterred from seeking compensation for missed or interrupted meal periods, the class should only be conditionally certified with regard to units about which Plaintiffs have personal knowledge." (Doc. 66, 16.) In support of limiting the scope of the class,

Defendants argue that Plaintiffs have never worked at First Hospital and CHOICES, have no knowledge of the specific exception reporting protocols at those locations, and have no evidence of employees working though meal periods. *Id.* Defendants also argue that Plaintiffs failed to make a necessary distinction between employees with patient care responsibilities and employees in non-medical departments. *Id.* at 17. Finally, Defendants argue that among employees with direct patient care responsibilities, Plaintiffs have only worked on "a handful of WBCH Units . . . Coronary Care, Surgical Intensive Care, Cardiothoracic Intensive Care, Open Heart, Telemetry, and Inpatient Cardiac Rehabilitation." (Doc. 66, 17.) Since these other units were not Plaintiffs' "principal" unit, and since Plaintiffs "admit to no knowledge regarding the specific exception reporting protocols, or whether the employees sought, received, or have been denied compensation for missed or interrupted meal periods," Defendants argue that the class should be limited to employees with direct patient care responsibilities on Plaintiffs' principal unit. (Doc. 66, 17-18.)

Plaintiffs argue in response that they do not have to prove an "absolute uniformity of facts with every absent class member to win conditional certification." (Doc. 70, 7.) *See generally Outlaw,* 2012 WL 3150582, at *6 (citing *Beauchamp v. Penn Mut. Life Ins. Co.,* No. 10–7170, 2011 WL 3268161, at *5 (E.D. Pa. July 29, 2011); *Taylor v. Pittsburgh Mercy Health Sys.,* No. 09–377, 2009 WL 2003354, at *3 (W.D. Pa. July 7, 2009); *Bishop v. AT & T Corp.,* 256 FRAT 503, 508–09 (W.D. Pa.2009)). More pointedly, however, while Plaintiffs acknowledge that "there certainly are some factual differences between Plaintiffs and the various Class members," none of these differences "have anything to do with whether Defendants knew (or should have known) that the Class members were being improperly denied wages for work that they were regularly suffered or permitted (if not required) to perform." (Doc. 70, 8.) In *Titchenell v. Apria Healthcare Inc.,* where a

13

defendant contended that the case would "'involve questions of fact that will vary widely and differ for each potential plaintiff,' which favors denial of certification," the court noted that "'[w]ithin this Circuit . . . courts confronting such circumstances have granted conditional certification, and thus held the case over until the next stage of the certification analysis.'" *Titchenell v. Apria Healthcare Inc.*, No. 11-563, 2011 WL 5428559, at *7 (E.D. Pa., Nov. 8, 2011)(citing *Burkhart–Deal v. Citifinancial, Inc.*, No. 07–cv–1747, 2010 WL 457127, at *2–3 (W.D. Pa. Feb.4, 2010)). Similarly, in *Williams*, the court "defer[ed] ruling on the size and scope of any class until discovery is complete and the issue of final certification is before the Court." *Williams v. Owens & Minor, Inc.*, No. 09-00742, 2009 WL 5812596, at *3 (E.D. Pa. Oct. 9, 2009). Therefore, the Court will grant Plaintiffs' motion for conditional certification of the meal period work class.

**B.     Uniform Maintenance Sub-Class**

In addition to the meal period work class, Plaintiffs also propose to send notice to "all persons who have worked as hourly uniformed employees at WBGH," the uniform maintenance class members, "during any workweek in the three years preceding this Court's conditional certification ruling." (Doc. 62, 7.)

Plaintiffs assert that they and the purported uniform maintenance class were governed by policies requiring them to wear certain articles of clothing to work. (Doc. 62, Ex. J.) Plaintiffs also assert that they were governed by common policies requiring them to "wear clothing and uniforms that are clean, neat and in good repair, and which reflect a high standard of good grooming." (Doc. 62, Ex. L, 8.) In addition, Plaintiffs allege that all employees were required "to present an image that conveys a strong sense of professionalism to patients, visitors, co-workers, and the community." (Doc. 62, Ex. K, 1.) A policy presented by the plaintiffs also provides that "[e]mployees who are required to wear a uniform must do so. Uniforms are to be kept clean and should be neatly pressed." *Id.* at

2. Plaintiffs assert that they and the purported class members were not permitted to maintain their uniforms "on the clock" or at work and were not given access to equipment or facilities to perform this work during their shifts. (Doc. 62, Ex. A, 202-203, 226.) Plaintiffs assert that they and purported class members spent approximately eight (8) hours each month washing, spot cleaning, drying, and ironing their uniforms. (Doc. 24, ¶ 53, 54.) In addition, Plaintiffs claim that Defendants witnessed the results of this work. (Doc. 62, Ex. B, 181.)

Few courts within the Third Circuit have addressed motions for conditional certification regarding claims for unpaid uniform maintenance work in the healthcare industry. Again, Plaintiffs rely heavily on *Outlaw*, which squarely addresses this issue and grants plaintiff's motion for conditional certification. In *Outlaw,* the court noted that "[E]mployer handbooks . . . contain a common uniform maintenance policy requiring employees to wear specific clothing and to keep that clothing neat and clean." *Outlaw,* 2012 WL 3150582 at *5. The court concluded that the common policy and evidence that the employer did not provide washing or ironing facilities at work or permit employees to do their uniform maintenance work during regular working hours was sufficient to grant conditional certification. *Id.*

In response, Defendants argue that the "wide variety of clothing" worn at the hospital makes this case "less compelling than cases where conditional certification has been denied." (Doc. 66, 21.) In support of this argument they rely on *Williams v. Securitas Security Services USA, Inc.,* Civ. A. No. 10–7181, 2011 WL 3629023 (E.D.Pa. Aug.17, 2011), a case where conditional certification was denied for a purported class of "Pennsylvania Securitas employees" who were guarding the facilities of a number of different clients. *Id.* at *5. Plaintiffs asserted that "they wear a wide variety of uniforms depending on the need of the particular client whose facility they are guarding." *Id.*

15

Similarly, in *Hawkins v. Securitas Sec. Services USA, Inc.*, another case relied on by Defendants denying conditional certification, the proposed class included security employees of clients "at numerous locations throughout the region" and that "individual security officers in the putative class worked under different circumstances and were managed by different personnel." 280 F.R.D. 388, 399 (N.D. Ill. 2011). Although these courts found that individual examination of each employee's uniform and cleaning or maintenance habits was grounds for denying conditional certification in the security industry, the Court finds the reasoning of *Outlaw* to be more persuasive regarding uniform maintenance claims in the healthcare industry.

Defendants also assert that although Plaintiffs claim that they were required to "press" or iron their uniforms for the entirety of the relevant time period, the policy requiring employee attire to be "neatly pressed" was eliminated in January of 2011. (Doc. 66, 22.) Defendants further claim that the policy is "FLSA neutral" and that "Plaintiffs have provided the Court with no facts that any other employees shared their belief that 'neat' and 'professional' means that clothing is required to be 'ironed.'" (Doc. 66, 23.) Although the Plaintiffs assert that the requirement to iron persisted throughout the class period, the veracity of this assertion does not determine the appropriateness of conditional certification. *See generally Hively v. Allis-Chalmers Energy, Inc.*, 2013 WL 5936418, at *6 (At this initial phase of conditional certification, courts do not "reach the merits of Plaintiffs' FLSA claims or make conclusive findings."). Notably, in *Outlaw*, the uniform maintenance policy that applied to the class that was conditionally certified required employees "to wear specific clothing and to keep that clothing neat and clean." *Outlaw*, 2012 WL 3150582, at *5.

In addition, Defendant argues in the alternative that "the class should be conditionally certified only for WBGH employees prior to January 2011 whose department director mandated that they wear non-street clothing at work." (Doc. 66, 29.) Defendant cites no

16

authority in support of limiting the class in this manner. In the absence of persuasive arguments and authority to the contrary, the Court will conditionally certify the uniform maintenance class.

## C. Evidence of Opt-In Interest

Defendant makes a final argument that class certification should be denied in this case because "[p]laintiffs have presented the Court with no indication, much less evidence, that any other potential class members are interested in joining the litigation."[5] (Doc. 66, 29.) Moreover, while some courts have considered evidence of the interest of potential class members in joining the litigation favorably in granting conditional certification, the Court is not convinced that the absence of such evidence functions as an independent ground for denying conditional certification within the Third Circuit, as Defendants appear to argue.[6] Thus, the Court will not treat it as such.

---

[5] As an initial matter, this assertion does not appear to be entirely accurate. Plaintiffs' initial disclosures name twenty current and former employees who are familiar with the issues presented in the case and have expressed interest in joining the case if offered the chance. (Doc. 70, Ex. A.)

[6] In *Kronick v. bebe Stores, Inc.*, the court declined to conditionally certify a putative class where "[p]laintiffs failed to offer sufficient evidence of a factual nexus between the Plaintiffs' circumstances and the proposed class of all other current and former of [sic] Defendant's employees who worked overtime." No. 07-4514, 2008 WL 4546368, at *2 (D.N.J. Oct. 2, 2008). The court's decision was not based on the number of declarations presented by the plaintiffs. *Id.* Similarly, in *Dreyer v. Altchem Environmental Services, Inc.*, the court's decision was based on plaintiffs' failure to "offer sufficient evidence of a factual nexus between the Plaintiffs' circumstances and the proposed class," not the number of affidavits presented. No. 06-2393, 2007 WL 7186177, at *3 (D.N.J. Sept. 25, 2007). Finally, while *Knutson v. Blue Cross & Blue Shield of Minnesota* requires plaintiffs to "proffer evidence that other similarly situated individuals desire to opt in to this case," and this burden was not

### III. Conclusion

Since Plaintiffs have made a modest factual showing that they are similarly situated to members of the meal period work and uniform maintenance classes, the Court will grant Plaintiffs' Motion.

An appropriate order follows.

| | |
|---|---|
| December 19, 2013 | /s/ A. Richard Caputo |
| Date | A. Richard Caputo |
| | United States District Judge |

---

satisfied by a declaration from a former employee suggesting that the declarant would opt in given the opportunity where at least three others expressly disavowed joining the case, the Court is not persuaded that this standard applies to the present case. No. 08-584, 2008 WL 4371382, at *3 (D. Minn. Sept. 23, 2008).