## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **LYNN MARIE POTOSKI and DENISE GAITERI, on behalf of themselves and others similarly situated,**<br><br>               **Plaintiffs**<br><br><br>      **v.**<br><br>**WYOMING VALLEY HEALTH CARE SYSTEM and WILKES-BARRE GENERAL HOSPITAL,**<br>          **Defendants.** | **No. 3:11-cv-00582-ARC** |

## DEFENDANTS' BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AS TO APPLICABLE LIMITATIONS PERIOD <u>FOR PLAINTIFFS' CLAIMS</u>

**POST & SCHELL, P.C.**

**Sidney R. Steinberg**
ssteinberg@postschell.com
**Andrea M. Kirshenbaum**
akirshenbaum@postschell.com
**David E. Renner**
drenner@postschell.com

**Four Penn Center**
**1600 John F. Kennedy Blvd.**
**Philadelphia, PA 19103**
**Phone:  (215) 587-1000**
**Facsimile:  (215) 587-1444**

*Counsel to Defendants*

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................... ii

I.   STATEMENT OF QUESTION PRESENTED ............................................3

II.  FACTUAL BACKGROUND...............................................................3

III. SUMMARY JUDGMENT STANDARD ....................................................3

IV.  ARGUMENT...............................................................................4

    A.   Evidence Of Willfulness Must Be Directed At The Employer's
        Knowledge That Its Conduct Violated The FLSA...............................5

    B.   Cases Where Willfulness Was Found Require Specific Evidence.
        Negligence Is Not Enough .....................................................6

    C.   There Is No Evidence That The Hospital Sought To Evade
        FLSA Compliance.................................................................8

    D.   Opt-In Plaintiffs Knew How To Submit For Payment ......................11

    E.   This Case Is Consistent With Those In Which Willfulness Was
        *Not* Found .......................................................................12

    F.   Knowledge Of Missed Breaks Is Not The Same As Knowledge
        That Employees Were Not Being Paid For Missed Breaks...............15

    G.   White v. Baptist Mem'l Health Care Corp.........................................18

# TABLE OF AUTHORITIES

**Cases**                                                                  **Page(s)**

*Alvarez v. IBP, Inc.*,
  339 F.3d 894 (9th Cir. 2003) ...............................................................7

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) .........................................................................4

*Boyle v. Cnty. of Allegheny*,
  139 F.3d 386 (3d Cir. 1988) ..............................................................4

*Brantley v. Inspectorate Am. Corp.*,
  821 F. Supp. 2d 879 (S.D. Tex. 2011)..............................................15

*Camesi v. Univ. of Pittsburgh Med. Ctr.*,
  No. CIV.A.-09-85J, 2011 U.S. Dist. LEXIS 146067 (W.D. Pa. Dec. 20,
  2011) ..............................................................................................9

*Childers v. Joseph*,
  842 F.2d 689 (3d Cir. 1988) ..............................................................4

*Davilla v. Menendez*,
  717 F.3d 1179 (11th Cir. 2013) ..........................................................7

*DeSilva v. N. Shore-Long Island Jewish Health Sytem*,
  27 F. Supp. 3d 313 (E.D.N.Y. 2014)............................................. 9-10

*Fairchild v. All Am. Check Cashing, Inc.*,
  815 F.3d 959 (5th Cir. 2016) ............................................................19

*Flores v. City of San Gabriel*,
  824 F.3d 890, 905-907 (9th Cir. 2016) ..........................................6, 7

*Forrester v. Roth's I.G.A. Foodliner, Inc.*,
  646 F.2d 413 (9th Cir. 1981) ............................................................20

*Frye v. Baptist Mem. Hosp.*,
  No. 07-2708, 2010 U.S. Dist. LEXIS 101996 (W.D. Tenn. Sept 27,
  2010) ..............................................................................................9

*Hanscom v. Cateret Mortg. Corp.*,
  No. 1:06-CV-2483, 2008 U.S. Dist. LEXIS 89706 (M.D. Pa. Nov. 5,
  2008) ..............................................................................................14

*Hill v. United States*,
  751 F.2d 810 (6th Cir. 1984) ..............................................................9

*Khadera v. ABM Indus.*,
  2012 U.S. Dist. LEXIS 22327 (W.D. Wash. 2012) .............................8

# TABLE OF AUTHORITIES-Cont'd

**Cases**                                                                                   **Page(s)**

*Lexington Ins. Co. v. W. Pa. Hosp.*,
    423 F.3d 318 (3d Cir. 2005) ..................................................................................4

*Lundy v. Catholic Health Sys. of Long Island Inc.*,
    711 F.3d 106 (2d Cir. 2013) ..................................................................................9

*McLaughlin v. Richland Shoe Co*,
    486 U.S.. 128 (1988) ............................................................................. 3, 4, 5, 6

*Oakes v. Pennsylvania*,
    871 F. Supp. 779 (M.D. Pa. 1995) ............................................................ 13, 14

*Ramos v. Al-Bataineh*,
    599 Fed. Appx. 548 (5th Cir. 2015) ....................................................................7

*Souryavang v. Lackawanna Cty.*,
    872 F.3d 122 (3d Cir. 2017) ...................................................................... *passim*

*White v. Baptist Mem'l Health Care Corp.*,
    699 F.3d 869 (6th Cir. 2012) .............................................................. 9, 18, 19

*Wolman v. Catholic Health Sys. of Long Island, Inc.*,
    853 F. Supp. 2d 290 (E.D.N.Y. 2012) ..................................................................9

*Wood v. Mid-America Mgmt. Corp.*,
    192 Fed. Appx. 378 (6th Cir. 2006) ...................................................................17

## Statutory Authorities

29 U.S.C. §255 .......................................................................................................5

## Rules and Regulations

Fed. R. Civ. P. 56(c) ..............................................................................................3

Defendants Wyoming Valley Health Care System and Wilkes-Barre General Hospital ("the Hospital") submit their Memorandum of Law in support of the accompanying Motion for Summary Judgment as to the "willfulness" of their actions, allegedly in violation of the overtime provisions of the Fair Labor Standards Act ("FLSA"). Defendants submit the Motion, Statement of Undisputed Material Facts ("SUMF") and Memorandum of Law pursuant to the Court's Order of September 25, 2018. As set forth in the Motion preceding the referenced Order, the parties have resolved this matter pending Court approval, with one issue remaining - whether there is a genuine issue of fact as to the willfulness of the Hospital's alleged violation of the FLSA. For the reasons set forth below and in the SUMF, the Hospital's alleged actions were not so "egregious" as to meet the Supreme Court's definition of "willfulness" as applied by the Third Circuit. Summary judgment on this issue should be granted to the Hospital.

It is important to begin with what the issue is *not*. The issue is not whether the Hospital was aware that certain of its employees worked through their meal breaks. It was. While the Hospital strongly encouraged employees to take 30-minute uninterrupted meal breaks, it was well-aware that in an acute health care setting, this was not always possible.

The Hospital maintained a legally-compliant practice of automatically deducting a 30-minute meal break from an employee's pay if she worked more

than 6 hours in a day.  However, during the relevant period, the Hospital's explicit

policy, of which all employees were aware, was that if an employee submitted an

"exception report" that she did not receive a 30-minute uninterrupted meal break,

she would be paid for the time.  No manager ever contradicted this policy and no

employee was ever disciplined for submitting an exception report. The evidence is

that 100% of the submitted missed breaks were paid.

In order to ensure that employees were aware of the Hospital policy, it was

contained in the Hospital's Employee Handbook and employees were required to

annually read and affirm their understanding of it.  The Hospital permitted

managers to tailor the method by which missed meal breaks would be reported to

the needs of the Department.  But with slight variations, the employees were

required to do nothing more than submit to the manager a paper with the

employee's name, date of missed break and a brief explanation of the reason for

the missed break.  There is no evidence that opt-in class Plaintiffs did not

understand how to report missed/shortened breaks for payment.  Nor is there

evidence that any Department manager *ever* refused to submit to the payroll

Department or Nursing Staff Office a meal break exception report.  This is borne

out by the fact that the 140 opt-in members submitted 4592 exceptions from April

2011 to the April 2018.

The only issue is whether there is evidence that the Hospital, as an institution, "knew" that its conduct violated the FLSA or showed "reckless disregard" for whether its conduct violated the law. *Souryavang v. Lackawanna Cty.*, 872 F.3d 122, 126 (3d Cir. 2017), *citing McLaughlin v. Richland Shoe Co*, 486 U.S.. 128, 133 (1988). This is an insurmountable hurdle for the opt-ins and summary judgment is in order.

## I.      STATEMENT OF QUESTION PRESENTED

Is there evidence that the Hospital knew, or showed reckless disregard, that its policies and practices in relation to paying employees for missed or shortened meal breaks violated the FLSA?

**Suggested Answer:**

No.

## II.     FACTUAL BACKGROUND

The Hospital incorporates its SUMF as submitted. Relevant facts are referenced in the body of its Argument.

## III.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c).

The Third Circuit has cautioned that issues of fact are genuine "only if a reasonable jury, considering the evidence presented, could find for the non-moving

party." *Childers v. Joseph*, 842 F.2d 689, 693-94 (3d Cir. 1988). "Material facts" are those which will affect the outcome of the trial under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether an issue of material fact exists, a court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *Boyle v. Cnty. of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1988). "[C]olorable, conclusory or speculative" evidence, however, will not do. *Anderson*, 477 U.S. at 249.

Moreover, a plaintiff's beliefs or suspicions are not evidence and a "material fact" dispute cannot be created out of thin air. *Lexington Ins. Co. v. W. Pa. Hosp.*, 423 F.3d 318, 332-33 (3d Cir. 2005) (conjecture and speculation may not defeat a motion for summary judgment).

## IV.    ARGUMENT

The bar is high for a plaintiff or class to establish that an employer's violation of the FLSA is "willful." Cases applying *McLaughlin*, *supra*, including *Souryavong*, a precedential decision affirming this Court's judgment to the employer as a matter of law on whether the violation of the FLSA was willful, require evidence that the employer's violation of the Act was not just "unreasonable" or "negligent." Rather, the evidence must demonstrate "egregiousness," "ill will," "manipulation" and "concealment" in relation to a known or recklessly disregarded violation of the FLSA. *Souryavong*, 872 F.3d at

126-27.  The facts in the instant matter come nowhere close to this level of

conduct.  Plaintiffs cannot present evidence of willfulness and the 2-year FLSA

statute of limitations should apply[1].

### A.   Evidence Of Willfulness Must Be Directed At The Employer's Knowledge That Its Conduct Violated The FLSA

Specifically, the statute of limitations for actions under the FLSA is "two

years after the cause of action accrued … except that a cause of action arising out

of a willful violation may be commenced within three years after the cause of

action accrued." 29 U.S.C. §255.  As noted, in *McLaughlin*, the Supreme Court

held that to prove willfulness under the FLSA, the evidence must show that "the

employer knew or showed reckless disregard for the matter of whether its conduct

was prohibited by statute." *McLaughlin*, 486 U.S. at 133.  The Court found that "in

common usage the word 'willful' is considered synonymous with such words as

'voluntary,' 'deliberate' and 'intentional.'" *Id*.  It held that a court should not find

willfulness: "[i]f an employer acts unreasonably, but not recklessly, in determining

its legal obligation." *Id.* at 132-35 & n. 13.  Simply establishing that the FLSA is

---

[1] Although the question of willfulness is generally a "question of fact," the issue can be taken from a jury if "there is no legally sufficient evidentiary basis for a reasonable jury to find for the non-moving party" *Souryavong*, 872 F.3d at 125 (citation omitted).  Furthermore, inasmuch as the parties have jointly moved for the Court to resolve appropriate FLSA limitations period in a summary judgment motion, Plaintiffs should not be heard to argue that the issue is inappropriate for such a motion.

"in the picture" is not enough. *Id.*

Moreover, the evidence of willfulness must be directed at the employer's knowledge or disregard of the *violation of the FLSA*. "Willful FLSA violations require a more specific awareness of *the legal issue*." *Souryavong*, 872 F.3d at 126, *citing Flores v. City of San Gabriel*, 824 F.3d 890, 896, 905-907 (9th Cir. 2016) (emphasis added).  This is a critical distinction in the instant matter.  The Hospital may have known that employees worked during or through meal breaks.  But with published policies, over 4500 exceptions reported and paid and no evidence of a single complaint that missed or shortened breaks were not being compensated, there will be no evidence that the Hospital disregarded known violations of the Act.

### B.    Cases Where Willfulness Was Found Require Specific Evidence. <u>Negligence Is Not Enough</u>

A review of cases applying *McLaughlin* illustrates the evidence necessary – starting with cases where the evidence showed there to be knowledge or reckless disregard of an FLSA violation.

As noted, *Flores*, *supra*, was cited by the Third Circuit in *Souryavong* for an example of willfulness.  The *Flores* court defined "willfulness" as requiring evidence that the employer was "on notice of its FLSA requirements, yet [took] no affirmative action to assure compliance with them." *Flores*, 824 F.3d at 906

(citations omitted).  Specifically, San Gabriel was found to have violated the FLSA by not including in its calculation of the overtime rate of pay payments made to employees in lieu of benefits.  The court found that the City offered no evidence of affirmative steps taken to ensure compliance with the FLSA (*Id.* at 905-906) despite (as characterized by the court in *Souryavong*) "familiarity with the type of problem" for nine years. *Souryavong*, 872 F.3d at 126.

The other case cited by the *Souryavong* court for the type of "egregious" conduct supporting willfulness was *Davilla v. Menendez*, 717 F.3d 1179 (11th Cir. 2013), in which a family failed to pay their nanny the legally required minimum wage despite knowing the legal requirement to do so, while forcing her to work "twice as many hours as the family claimed … and [instructing] her to lie about her employment." *Id.* 717 F.3d at 1182-85.

Similarly, in *Ramos v. Al-Bataineh*, 599 Fed. Appx. 548, 551 (5th Cir. 2015), the court affirmed a finding of willfulness where the employer had failed to pay his employee overtime "for the 92 hours she worked weekly over an almost-20 year period," finding the ratio between the hours worked and wages paid "egregiously disproportionate." *See also Alvarez v. IBP, Inc.*, 339 F.3d 894 (9th Cir. 2003) (despite long-running litigation over compensation for donning and doffing in a meat-packing plant, employer's rules did not compensate such activities during meal breaks.  Court found that employer's actions were

characterized as "attempts to evade compliance or to minimize the actions necessary to achieve compliance."); *Khadera v. ABM Indus.*, 2012 U.S. Dist. LEXIS 22327 (W.D. Wash. 2012) (court found that employees had complained about underpayment, putting employer on notice of possible FLSA violation – leading to genuine issue of fact as to willfulness).

The facts of the instant matter show none of the indicia of egregiousness or evasion of FLSA compliance that are at the core of the cases finding or affirming willfulness.

**C.    There Is No Evidence That The Hospital Sought To Evade
FLSA Compliance**

Initially, the Hospital's Meal Break Policy (D.13) mandates compliance with "applicable state and federal laws" and explains that "for any break to be unpaid, it must be at least 30 minutes in duration and uninterrupted" (SUMF, ¶ 17). The Policy clarifies that "a break of less than 30 uninterrupted minutes must be paid under federal law even if state law provides it is unpaid."  Employees had access to this policy (SUMF, ¶ ¶ 41-55) and the deponents were aware that they could (and many were instructed or encouraged to) seek payment for missed/shortened meal breaks (Id.).

To this end, the Hospital's program of scheduling employees for 8.5 hours per shift but automatically deducting a 30-minute meal break complies fully with

the FLSA.  Exception reporting systems of this nature are FLSA-compliant as a matter of law. *See White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 873 (6th Cir. 2012) *citing Hill v. United States*, 751 F.2d 810 (6th Cir. 1984) (court found that it is well-settled that "an automatic meal deduction system is lawful under the FLSA"); *Camesi v. Univ. of Pittsburgh Med. Ctr.*, No. CIV.A.-09-85J, 2011 U.S. Dist. LEXIS 146067 (W.D. Pa. Dec. 20, 2011) (decertifying collective action in part because an "employer's use of automatic meal break deductions is not *per se* violative of the FLSA"); *Wolman v. Catholic Health Sys. of Long Island, Inc.*, 853 F. Supp. 2d 290, 294 (E.D.N.Y. 2012) aff'd in part, rev'd in part on other grounds sub nom. *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106 (2d Cir. 2013) ("Defendants' adoption of a system that, by default, deducts meal breaks from its employees' compensation does not constitute a policy that violates the FLSA").

It is equally well-settled "that employers utilizing an automatic meal deduction policy may legally shift the burden to their employees to cancel the automatic deduction if they work through an unpaid meal break." *Wolman*, 853 F. Supp. 2d at 301; *Frye v. Baptist Mem. Hosp.*, No. 07-2708, 2010 U.S. Dist. LEXIS 101996, *20 (W.D. Tenn. Sept 27, 2010), *aff'd* 495 F. Appx 669 (6th Cir. 2012) (court found that an "exception reporting" system is a "natural consequence" of any employer's adoption of a lawful automatic deduction policy).  "An employer's

timekeeping policies are legal as long as they allow for the complete and accurate recording of all time worked." *DeSilva v. N. Shore-Long Island Jewish Health Sytem*, 27 F. Supp. 3d 313, 321 (E.D.N.Y. 2014).

Consistent with the above-cited cases, Section II of the Employee Handbook, which is provided or available to every employee (SUMF, ¶¶ 21-24), states:

> Missed Meals – There may be times that an employee may not be able to complete an uninterrupted meal break.  It is the employee's responsibility to notify his/her supervisor so that timekeeping for payroll is accurate.  Employees must notify his/her [sic] supervisor each and any time a meal break is missed.

Further, Section v. of the Employee Handbook (Id.) also provides (in relevant part): "If an employee is unable to take his/her scheduled meal period due to work related issues, the employee will be paid for this time.  *However, you must notify your supervisor via department channels in order for this to be recorded*" (emphasis in original)[2].

Unlike the cases where willfulness was found because the employer either "took no efforts to insure compliance" with the FLSA or attempted to "evade compliance," the Hospital ensured and documented that each employee "fully

---

[2] While Policy D.6(2.0) requires employees to use the time clock to record missed meal breaks, the evidence is that each manager was permitted to use whatever notification procedure was most suitable for her Department (SUMF, ¶ 13) and that no employee ever believed it necessary to report missed or interrupted breaks in this way.

[understood] the process associated with missed and/or shortened meal periods"
which included a responsibility "to report missed or shortened (to less than 30
minutes) meal periods to my supervisor." (SUMF, ¶¶ 18-20).

### D.   Opt-In Plaintiffs Knew How To Submit For Payment

Nor was this an empty policy as implemented by the Hospital.  To the
contrary, *every* opt-in employee deposed testified that s/he:

- Was aware of the Hospital's policy or practice of compensating employees for missed or shortened meal breaks;

- Knew how to notify his/her manager of a missed/shortened meal break:

- Had successfully submitted an exception report for a missed/shortened meal break (SUMF, ¶¶ 41-55).

Not only is there no evidence that the Hospital sought to shirk or avoid
compliance with its FLSA obligations, but there is *no* evidence:

- that any employee was ever instructed not to report a missed/shortened meal break for payment:

- that any manager or supervisor ever refused to approve an employee's submitted paperwork for a missed/shortened meal break;

- that any employee was ever disciplined, threatened with discipline or reprimanded for submitting for a missed/shortened meal break;

- that any employee was ***ever*** not paid for a submitted missed/shortened meal break;

- that any employee ever complained to his/her manager that s/he was not being paid for missed/shortened meal breaks (SUMF, ¶¶ 41-55)[3];

While it is, of course, Plaintiffs' obligation to produce evidence of the Hospital's willfulness with respect to its FLSA obligation (of which there is none), the Hospital's affirmative evidence that from April 2011 to April 2018, the 140 remaining opt-ins submitted a total of 4,592 exception reports (SUMF ¶ 38) demonstrates both the Hospital's efforts to comply with the FLSA and its success in doing so.  More importantly, such evidence serves to demonstrate how far Plaintiffs are from being able to demonstrate that the Hospital's actions were egregious or that there was any level of "manipulation and concealment" with respect to its FLSA obligations.  *Souryavong*, 872 F.3d at 127.

### E.    This Case Is Consistent With Those In Which Willfulness Was _Not_ Found

The facts of the instant matter pale in comparison to even those cases in which courts have *refused to find* willfulness under the FLSA as a matter of law. The controlling case is *Souryavong*, *supra*.  In *Souryavong*, the evidence was that the employer's representatives were "generally aware" of the FLSA and its requirements and should have known that the employees in question were working *unpaid* overtime based largely on an email from the County's Human Resources

---

[3] Multiple employees testified that if they ever had concerns regarding having been paid properly, they knew to contact Human Resources and that the issue was uniformly resolved satisfactorily (SUMF, ¶ 43, 45).

Director in which she advised County officials of "wage and hour issues" about

which  "[certain employees] may file a grievance for back pay for overtime being

paid straight time." *Souryavong*, 872 F.3d at 124.  The court affirmed this Court's

decision granting summary judgment to the County on the question of willfulness,

finding that "nothing indicates Lackawanna County's violation could be attributed

to any . . . level of willfulness." The court specifically found that "the evidence

shows nothing akin to the manipulation and concealment found in the facts of

*Davila*." *Id.*

Significantly, the *Souryavong* court held that "a plaintiff must put forward at

least some evidence of the employer's awareness of a *violation of the FLSA*

*overtime mandate*." *Id*. at 127.  The court found that because the email referencing

"wage and hour issues" did not specifically reference the FLSA, it did "not belie an

awareness of an FLSA problem." *Id*.

The *Souryavong* court cited *Oakes v. Pennsylvania*, 871 F. Supp. 779 (M.D.

Pa. 1995) as to the level of knowledge *of an FLSA problem* necessary to

demonstrate a "willful" violation of the statute.  In *Oakes*, the court denied

summary judgment to the Commonwealth on the question of whether the police

officers in question should have been compensated for meal periods during which

the Commonwealth placed significant restrictions on their ability to use the period

"for their own purposes."  However, the court granted judgment to the

Commonwealth on the issue of willfulness despite the fact that years before the

litigation "the plaintiffs brought the problems associated with the unpaid meal

periods to the State's attention through grievances [seeking overtime pay] during

contract negotiations."  The court found, however, that the grievances did not

specifically "alert the Defendants that the FLSA required them . . . to pay the

Plaintiffs for all meal periods" and therefore did not specifically put the

Commonwealth on notice of the FLSA violation. *Id.*

   *Hanscom v. Cateret Mortg. Corp.*, No. 1:06-CV-2483, 2008 U.S. Dist.

LEXIS 89706 (M.D. Pa. Nov. 5, 2008)(Kane, J.) is also instructive.  The court

discussed the applicable limitations period extensively, surveying cases where

willfulness was found "where an employer had information that its practices were

*illegal*." *Id.* at *14 (emphasis in original), such as where the employer knows its

payment plan is, at best "questionably legal" and fails to take action, or where an

employer had prior and specific notice that its actions violated the FLSA. *Id.* at *9-

10. The court contrasted those circumstances with cases where the evidence was

that the employer's application of the FLSA was "erroneous" or where the

employer "reasonably believed he was complying with existing FLSA law." *Id* at

*11.  The *Hanscom* court granted judgment to the defendant on the issue of

willfulness, finding that the company's reliance on "existing law and industry and

industry practice . . . even if mistaken – does not amount to a willful violation of

the FLSA." *See also Brantley v. Inspectorate Am. Corp.*, 821 F. Supp. 2d 879 (S.D. Tex. 2011) (judgment to the employer on the issue of willfulness,  Despite "long-running litigation" with the Department of Labor regarding salary premiums and overtime rates, the employer was not "on notice" of the alleged illegality of its deductions to employee salaries).

There is no evidence in the instant matter, as required by *Souryavong* and the cases referenced, that the Hospital was on notice that its meal break policy or the manner in which it implemented the policy violated the FLSA and that the Hospital ignored such notice.  Specifically, there is no evidence that any individual (much less a group or the bargaining unit at the Hospital representing nurses) ever complained that the Hospital was not properly compensating him/her/them for time spent working during meal breaks – thus making a finding of "willfulness" impossible under the existing law.

## F.  Knowledge Of Missed Breaks Is Not The Same As Knowledge That Employees Were Not Being Paid For Missed Breaks

It is anticipated that Plaintiffs will base their argument that the Hospital's actions with respect to the FLSA were "willful" on the assertion that, while the opt-in employees reported, collectively, over 4500 missed meal breaks during the relevant time period (an average of 33 per opt-in), the Hospital knew or should have known that its departments were staffed in such a way that the opt-in

Plaintiffs were unable to take a 30-minute uninterrupted meal break more frequently than the breaks actually reported[4]. Such an argument, if made, is supported by neither evidence nor law.

Initially, as referenced, every opt-in employee testified that s/he understood the Hospital's policy to pay for missed/shortened meal breaks, was never discouraged from submitting for missed breaks, did, in fact, submit for breaks and was paid for each break submitted pursuant to the Hospital's policies and procedures.  Multiple opt-in Plaintiffs testified that, nevertheless, they did not submit for *every* missed/shortened break because of personal circumstances. For example:

---

[4] Plaintiffs may also argue that, while they knew they could submit for payment for a "missed" meal break, they were somehow unaware that they could submit for payment for a "shortened" or "interrupted" meal break.  Initially, as referenced, Hospital Policy D.6, to which all employees had access, explicitly references that employees should submit for reimbursement if they do not "receive an uninterrupted meal break" and Policy D.13(3.0) provides: "for any break to be unpaid, it must be at least 30 minutes in duration and uninterrupted" and continues: "a break of less than 30 uninterrupted minutes must be paid under federal law . . . ." (SUMF, ¶ ¶ 10, 13-18, 21-24). Further, the Employee Handbook, distributed to all employees or available on the Hospital's intranet, explicitly defines a "missed meal" as a time when an employee is "[unable] to complete an uninterrupted meal break." (SUMF, ¶ 21).  Nor is there evidence that any opt-in employee ever questioned to his/her manager or Human Resources the extent of "interruption" required to receive payment for a meal period or ever even discussed the issue with any manager.  Again, the issue is not whether employees were interrupted during their meal periods or even whether there conceivably could have been an FLSA violation.  The issue at present is whether there is evidence that the Hospital was on notice *of an FLSA violation* and purposely and egregiously disregarded the same. The answer to this (the only relevant) question is: there was not.

- Doreen Natishan did not tell her manager "all the time" if she worked through lunch (SUMF ¶ 44).

- Denise Gaiteri felt that "usually by the end of the day when I don't have a meal break, I just want to punch out and go home and leave work. I don't want to fill out a Kronos sheet and get it approved . . . ." (SUMF ¶ 47).

- Erica Kadtke did not always complete a form because "sometimes the only thing on my mind was get home and go to sleep" (SUMF ¶ 48).

- Erica Weibrecht had various reasons for not completing forms: the forms were not available (or she was unable to locate the form), she was too busy to complete the form, she forgot to complete the form or "sometimes you just want to get out of there . . . ." (SUMF ¶ 53).

- Eva Eichorn was sometimes "too busy and forgot" to submit for payment for missed/shortened break (SUMF ¶ 54).

"[W]here employees sometimes use procedures to report time worked but neglect to do so for all time worked, an employer has no reason to know of the unreported time." *Wood v. Mid-America Mgmt. Corp*., 192 Fed. Appx. 378, 380 (6th Cir. 2006) (concluding that, because employee reported some overtime hours, employer "had no reason to suspect that he neglected to report other overtime hours"). This is particularly relevant in the instant matter where virtually all of the opt-in employees testified that their managers or supervisors were *not in the Department* and would not have been able to observe them working through a meal period. For example:

- Jasett Kelsey rarely saw her supervisor (SUMF ¶ 42)

- Helen Guilford primarily worked the night shift and only saw her manager, at shift change at the end of her shift as he was coming on for the day (SUMF ¶ 43)

- Doreen Natishan saw her supervisor only "once in a blue moon" (SUMF ¶ 44)

- Suzanne Hilaire worked night shift when manager was not present (SUMF ¶ 45)

- Erica Kadtke's managers were not aware of each time she missed a meal break during a shift or when (or if) her meal break was interrupted (SUMF ¶ 48)

- Maureen Jordan saw her clinical supervisor once every few months and her supervisor was unaware of if or when she worked during a meal break (SUMF ¶ 49)

It is apparent, therefore, that Plaintiffs would have the Court find, not just egregiousness, "manipulation and concealment" (*Souryavong*, 872 F.3d at 127), but also clairvoyance.

### G.   White v. Baptist Mem'l Health Care Corp.

The Court should be guided by the seminal meal-break decision of *White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 876 (6th Cir. 2012).  White, an ER nurse, sought to represent a class of employees claiming that they were not compensated for work performed during meal breaks.  Like the instant matter, White acknowledged in writing her understanding of the Baptist Memorial's FLSA-compliant procedure for reporting missed breaks for payment – which procedure was virtually identical to that of the Hospital in this case.  The evidence was that White was paid for times when she reported missed breaks and knew

18

compensation errors would be "handled immediately." *Id.* at 872.   However, "she

did not utilize this procedure to correct the interrupted meal break errors that she

failed to report because she felt it would be 'an uphill battle'."

The court affirmed the district court's grant of summary judgment to Baptist

Memorial on White's claim.  The court found that:

> Each time White followed Baptist's procedures for being compensated
> for interrupted meal breaks or for payroll errors she was compensated.
> But now White states she decided not to follow Baptist's procedures
> for being compensated for interrupted meal breaks and argues that
> Baptist violated the FLSA for not compensating her for interrupted
> meal breaks. *White occasionally told her supervisors that she was not
> getting her meal breaks. But she never told her supervisors that she
> was not being compensated for missing her meal breaks*. Accordingly,
> there is no way Baptist should have known she was not being
> compensated for missing her meal breaks. Therefore, her claims fail.
> *Id.* at 876 (emphasis added).

The court held that "under the FLSA, if an employer establishes a reasonable

process for an employee to report uncompensated work time, the employer is not

liable for non-payment if the employee fails to follow the established process.

When the employee fails to follow reasonable time reporting procedures she

prevents the employer from knowing its obligation to compensate the employee

and thwarts the employer's ability to comply with the FLSA." *Id.* (citations

omitted). As the *White* court succinctly summarized: "the relevant knowledge is

not 'I know the employee was working,' but 'I know the employee was working

<u>and</u> not reporting his time." *Id*. *See also Fairchild v. All Am. Check Cashing, Inc.,*

815 F.3d 959, 965 (5th Cir. 2016) (summary judgment to employer on FLSA claim

where employee "testified that she intentionally failed to report her unauthorized

overtime specifically because All American prohibited such overtime. To hold that

she is entitled to deliberately evade All American's policy would improperly deny

All American's right to require an employee to adhere to its procedures for

claiming overtime."); *Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413, 414

(9th Cir. 1981) (affirming summary judgment for employer "where an employer

has no knowledge that an employee is engaging in overtime work and that

employee ... deliberately prevents the employer from acquiring knowledge ... , the

employer's failure to pay ... is not a violation of [the FLSA]").

     *White* and the cases cited above granted judgment to the employer *as to*

*whether a violation of the FLSA had occurred*, which is a significantly steeper

burden than that faced by the Court in the instant matter – where judgment to the

Hospital is in order unless Plaintiff produces evidence that the Hospital had

specific awareness that it was violating the FLSA and egregiously shirked its

responsibilities in that regard.  For the reasons set forth at length above – there is

no such evidence that the Hospital's actions were "willful."  The FLSA's two-year

limitation period should be applied as a matter of law.

Respectfully submitted,

**POST & SCHELL, P.C.**

Dated:  <u>November 9, 2018</u>        By:    */s/ Sidney R. Steinberg*
                                               Sidney R. Steinberg
                                               ssteinberg@postschell.com
                                               Andrea M. Kirshenbaum
                                               akirshenbaum@postschell.com
                                               David E. Renner
                                               drenner@postschell.com

                                               Four Penn Center
                                               1600 John F. Kennedy Blvd.
                                               Philadelphia, PA 19103
                                               Phone:  (215) 587-1000
                                               Facsimile:  (215) 587-1444

                                               *Counsel to Defendants*

## CERTIFICATION OF WORD COUNT

I hereby certify that the attached Brief in Support of Motion to Dismiss Non-Responsive Opt-In Plaintiffs complies with the word limitations of LR 7.8(b)(2). The Brief contains approximately 4,902 words (excluding the cover page, table of contents, table of authorities, and certificate of service), as determined by the word count feature of the word processing system used to prepare the Brief.

Respectfully submitted,

**POST & SCHELL, P.C.**

Dated: <u>November 9, 2018</u>     By:   */s/ David E. Renner*
                                          David E. Renner
                                          drenner@postschell.com
                                          1600 John F. Kennedy Blvd.
                                          Philadelphia, PA 19103
                                          Phone:  (215) 587-1000
                                          Facsimile:  (215) 587-1444

## **CERTIFICATE OF SERVICE**

I hereby certify that I filed on this date a true and correct copy of the foregoing Brief in Support of Motion to Dismiss Non-Responsive Opt-In Plaintiffs via the Court's ECF System and that the same have thereby been served upon the following counsel of record, electronically:

David J. Cohen, Esquire
STEPHAN ZOURAS, LLP
604 Spruce Street
Philadelphia, PA 19106

Andrew C. Ficzko, Esquire
James B Zouras, Esquire
Ryan F. Stephan, Esquire
STEPHAN ZOURAS, LLP
205 North Michigan Avenue
Suite 2560
Chicago, IL 60601

*Counsel to Plaintiffs*

**POST & SCHELL, P.C.**

Dated:  November 9, 2018          By:    */s/ David E. Renner*
                                                    David E. Renner
                                                    drenner@postschell.com
                                                    Four Penn Center
                                                    1600 John F. Kennedy Blvd.
                                                    Philadelphia, PA 19103
                                                    Phone:  (215) 587-1000
                                                    Facsimile:  (215) 587-1444

                                                    *Counsel to Defendants*