**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| LYNN MARIE POTOSKI and DENISE GAITERI, on behalf of themselves and others similarly situated | NO. 3:11-CV-00582 |
| Plaintiffs, | (JUDGE CAPUTO) |
| v. | |
| WYOMING VALLEY HEALTH CARE SYSTEM and WILKES-BARRE GENERAL HOPSITAL | |
| Defendants. | |

## **MEMORANDUM**

Presently before me is a Motion for Summary Judgment (Doc. 189) filed by Defendants Wyoming Valley Health Care System ("WVHCS")[1] and Wilkes-Barre General Hospital ("the Hospital"). Plaintiffs Lynn Marie Potoski and Denise Gaiteri, on behalf of themselves and others similarly situated, claim Defendants deprived them of overtime pay for missed and interrupted meal breaks and uniform maintenance in violation of the Fair Labor Standards Act ("FLSA"). Because a genuine dispute of material fact exists as to whether Defendants acted with reckless disregard toward the Meal Break Class only, Defendant's Motion for Summary Judgment will be granted in part and denied in part.

## **I. Background**

### **A. Factual Background**

The facts presented in the summary judgment record, viewed in the light most favorable to Plaintiffs, are as follows:

---

[1] WVHCS owned and operated Wilkes-Barre General Hospital until April of 2009. (Doc. 71 at 1).

A "normal workday for most [hospital] employees" is "eight hours, excluding an unpaid meal period." (*See* Doc. 192-43, Ex. "38"[2] at 1). Pursuant to hospital policy, "non-exempt employees will be paid one and one-half times their Regular Rate of Pay for all Overtime worked as mandated by this policy and applicable laws." (Ex. Doc. 192-41, Ex. "36"[3] at 1-2; *see also* Doc. 191 "Defs.' SMF," ¶ 3; Doc. 192-3, "Pls. SMF," ¶ 3).[4] Overtime is "calculated on all hours worked over 40 hours in any workweek"; however, for those employees who work under an "8/80 option[,]" overtime is paid on "all time worked in excess of 8 hours in each day and all hours worked in excess of 80 hours in a 2-week pay period." (Ex. 36 *See also* Defs.' SMF ¶ 4, 5; Pls.' SMF ¶ 4, 5). "All overtime hours must be approved in advance by the department manager/supervisor. *Employees who work Overtime without supervisor approval will be paid for the Overtime but may be subject to disciplinary action*." (Ex. 36 (emphasis in original). *See also* Defs.' SMF ¶ 6; Pls.' SMF ¶ 6).

At all relevant times, the Hospital utilized the electronic payroll system, Kronos, which automatically deducted thirty (30) minutes of pay from an employee's time

---

[2] Exhibit "38" refers to Hospital Policy D.13.

[3] Exhibit "36" refers to Hospital Policy D.5.

[4] Local Rule 56.1 requires that a motion for summary judgment be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." M.D. Pa. L.R. 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issue for trial. *See id.* Both parties filed Rule 56.1 statements. (*See generally* Defs.' SMF; Pls.' SMF). Several paragraphs of Plaintiffs' opposition admit one or several parts of the corresponding paragraph in Defendant's statement. These partial admissions, however, are sometimes non-responsive to Defendant's factual statement and do not deny the substance of those paragraphs. Insofar as the partial admissions are not responsive to Defendant's factual statements, they can properly be deemed undisputed by virtue of Plaintiff's failure to comply with Rule 56.1. *See Weitzner v. Sanofi Pasteur, Inc.*, 909 F.3d 604, 613-14 (3d Cir. 2018).

when that employee worked over six (6) continuous hours. (Defs.' SMF ¶ 26, 27; Pls.' SMF ¶ 26, 27).[5] The automatic deduction could be overridden on either a "Department-by-Department basis" or on a "missed break-by-missed break basis" by a manager or supervisor. (Defs.' SMF ¶ 28).

### 1. Meal Breaks

The Employee Handbook defines employee meal periods as follows:

> If an employee is scheduled to work a shift of at least 6 hours duration, he/she is entitled to an uninterrupted 30-minute unpaid meal break. If the employee is leaving the facility or taking a meal period of more than 30 minutes, he/she will be required to clock *out* and back *in*. Meal periods shall be established by your supervisor and may change to conform to work schedules or business needs. Meals may not be eaten at work stations, but must be eaten in the cafeteria or other designated break areas.

(Doc. 192-39, Ex. "34"[6] at 9 (emphasis in original)). Hospital policies permit overtime compensation for missed or interrupted meal breaks for employees who have to work on their meal breaks. (*See id.*; Ex. 37 at 5 ("For employees who work in a department that, due to patient/client schedules, an employee may not be afforded an uninterrupted meal break, these employees will be compensated for all hours worked.")). To obtain such compensation, the Hospital requires employees to report any interrupted or missed meal breaks:

> All employees will be strongly encouraged to take a meal break. It is the responsibility of the supervisor, manager, and/or director to ensure the availability of the break when possible. **All non-exempt employees who do not receive an uninterrupted meal break must use the timeclock to record the missed meal break. It will be the employee's responsibility to record this and the supervisor's, manager's, and/or director's responsibility to monitor and verify the missed meal break.**

---

[5] This half-hour deduction is consistent with Hospital policy, which does not include thirty (30) minute meal breaks in its definition of a pay period. (*See* Doc. 193-42, Ex. "37" at 2). Exhibit "37" refers to the document "Working Hours and Overtime for Non-Salaried Employees Policy No. 30.1."

[6] Exhibit "34" refers to the Employee Handbook.

3

(Doc. 192-44, Ex. "39"[7] at 1 (emphasis in original)). Under the Hospital's policy for recording a missed or interrupted meal break:

> Employees should complete a Time Card Exception (Form 44) when they miss or encounter a shortened meal period (less than 30 minutes) due to work issues. . . . Employees will be required to review and approve a Kronos and/or other payroll detail report that illustrates each meal period deduction and each missed meal period.

(Ex. 38 at 1). Employees, including Plaintiffs, were required to sign a Missed Meal Break Acknowledgment form annually. (*Id.* at 2; Defs.' SMF ¶ 18). Employees, including Plaintiffs, were also given a hard copy of the Employee Handbook and could access the all of the Hospital's policies through the Hospital's intranet system on the computers at the facility. (Defs.' SMF ¶¶ 23, 25). Additionally, employees hired prior to August of 2012 could access the Employee Handbook through the Hospital's intranet system on any available computer at the facility. (*Id.* at ¶ 24).

Plaintiffs testified they were only able to take a full, uninterrupted thirty (30) minute meal break between roughly five percent (5%) and fifty percent (50%) of their qualifying shifts, with the majority indicating they took a full, uninterrupted meal break less than twenty percent (20%) of the time. (Admoitis Dep. 49:8-9; Davailus Dep. 36:2-3; Figueroa Dep. 41:3; Gaiteri Dep. 76:21-24; Hilaire Dep. 257:18-19; Howell Dep. 53:18; Jordan Dep. 66:8-10; Kadtke Dep. 59:6-10, 64:8; Kelsey Dep. 58:13-25; Orleski Dep. 25:2-5; Sciandra Dep. 45:17-23; Weihbrecht Dep. 47:14-15; Williamson Dep. 54:18-24; Wilson Dep. 36:15). While Plaintiffs' experiences differ as to the frequency of interrupted meal breaks and completely missed meal breaks, they nevertheless experienced both missed and interrupted meals regularly, which they reported to their supervisors. (Admoitis Dep. 63:19-22; Bell Dep. 57:21-25,118:12, 120:14-15; Davailus Dep. 26:12-16, 27:10-16; Eichorn Dep. 28:13-24, 29:5, 10; Figueroa Dep. 43:19, 54:19-25; Gaiteri Dep. 56:16, 24; Guilford Dep. 40:16-18, 41:7-8, 43:20, 64:13, 17; Hilaire Dep. 259:18-19, 105:4-6, 177:21-178:3; Howell Dep.

---

[7] Exhibit "39" refers to Hospital Policy D.6.

43:14-15, 55:6-21, 80:9-10, 96:6-15, 114:7; Jordan Dep. 56:12-23, 68:24-69:20, 114:7; Kadtke Dep. 73:14-19, 118:23-25; Kelsey Dep. 66:6-23, 69:4-5, 71:13-16; Natishan Dep. 77:22-78:5, 86:10-15, 89:12-15; Orleski Dep. 36:4, 60:17-61:4, 62:5-8; Potoski Dep. 123:24-124:17, 133:1-5, 191:21-192:4; Sciandra Dep. 39:1, 48:21-49:2, 51:16-17, 53:18-19, 59:23-61:4, 73:18-24, 107:18-24; Weihbrecht Dep. 54:15, 56:6-8; Williamson Dep. 51:4-10, 58:14-59:1). Plaintiffs largely admitted that they reported some but not all of their meal breaks using their department's procedures. (*E.g.* Adomitis Dep. 86:9-4; Eichorn Dep. 49:4, 51:9-11; Gaiteri Dep. 71:23-72:3; Guilford Dep. 39:5-6; Hilaire Dep. 193:2-7; Jordan Dep. 57:7, 106:23-107:3; Kadtke Dep. 69:4-22; Potoski Dep. 123:3-4; Sciandra Dep. 105:4-7, 120:9-12; Wilson Dep. 48:2-12). Among the reasons for not reporting missed or interrupted meal breaks were staffing problems, not realizing they were eligible to receive overtime pay for interrupted meal breaks, and working in an environment where they felt discouraged from reporting missed or interrupted meal breaks. (Adomitis Dep. 54:7-8, 63:3-22 78:8-13; Bell Dep. 55:15-23, 61:5-14; Davailus Dep. 22:23-25, 26:5-7, 45:11-25; Eichorn Dep. 29:24, 41:14-15, 49:20-22, 52:2-5; Gaiteri Dep. 72:12-13, 143:1-2, 145:15-21; Guilford Dep. 34:5-7, 40:1-2, 41:10-13, 42:13-15; Hilaire Dep. 37:21-39:6, 46:25-48:6, 51:12-18, 59:1-4, 120:16-121:20, 204:4-14, 123:21-24, 131:22-132:2, 136:10, 2014:13-14; Howell Dep. 79:1-21; Jordan Dep. 77:23-78:1, 83:14-84:24, 86:16-22, 87:13-16, 89:6-12, 108:23, 113:3-21, 115:5-10, 118:2-22; Kadtke Dep. 60:1-4, 67:11-15, 70:4-17, 102:9-15, 103:17-19, 108:22-109:6, 111:9-13, 112:22-24; Kelsey Dep. 17:6, 32:22-24, 66:6-7; Natishan Dep. 78:10-14, 90:2-9, 92:8-9, 112:9-14, 143:21-154:8; Orleski Dep. 43:3-4, 57:1-4, 62:6-8; Potoski Dep. 106:9-107:12, 113:2-114:21, 122:15-24, 123:17-19, 133:1-5; Sciandra Dep. 36:21-24, 62:18-19, 66:10-19, 82:12-16, 109:8-11, 112:21-113:3; Weihbrecht Dep. 42:16-20, 50:23-25, 96:10-12; Williamson Dep. 61:16-19; Wilson Dep. 44:1-45:4, 57:15-17, 70:10-13). A number of Plaintiffs were not sure whether they were actually compensated for the meal breaks they reported. (*E.g.* Orleski Dep. 65:8-16; Potoski Dep. 150:18-19, 152:24-153:7; Sciandra Dep. 109:18-

22; Wilson Dep. 67:6).

### 2. Uniforms

The Employee Handbook mandates "[a]ll employees are expected to be neat, clean and appropriately attire. . . [a]ll clothes should be of clean and proper fit. If uniforms are required, they must be of the established color and style specified for the work unit." (Ex. 34 at 11). If a uniform is required, employees are expected to keep their uniforms "clean" and "neatly pressed." (Doc. 192-45, Ex. "40"[8] at 3). Employees who do not follow these uniform policies are "subject to disciplinary action." (*Id.*).

Plaintiffs testified that they wash their uniforms at home, which they separate from their other non-work clothing, and stain treat and iron their uniforms when necessary. (Adomitis Dep. 95:14, 101:5, 105:15-16; Bell Dep. 148:10-22; Davailus Dep. 77:23, 78:4-12; Eichorn Dep. 57:20-23, 65:8; Gaiteri Dep. 94:2-9, 98:16; Guildford Dep. 70:14; Hilaire Dep. 219:1, 247:23-24; Howell Dep. 164:2-15, 178:19-20; Jordan Dep. 129:14, 130:21, 138:24; Kadtke Dep. 118:15-18; Kelsey Dep. 123:17-18, 127:9, 140:3-13; Natishan Dep. 117:16, 162:11; Orleski Dep. 69:1, 66:24; Potoski Dep. 160:17, 168:17-19, 170:6; Sciandra Dep. 120:17, 129:13, 133:23-25; Weihbrecht Dep. 122:16-22, 135:10-13; Williamson Dep. 131, 14:21, 133:1-10; Wilson Dep. 80:7-9). Plaintiffs also testified that they did not raise their concerns about uniform maintenance with their supervisors or management. (Adomitis Dep. 106:13; Bell Dep. 139:11; Davailus Dep. 89:18; Gaiteri Dep. 115:1; Hilaire Dep. 222:21; Jordan Dep. 143:17, 145:12-14; Kadtke Dep. 149:3-7; Kelsey Dep. 121:19-22; Natishan Dep. 130:2-4; Orleski Dep. 73:5-10; Sciandra Dep. 143:10-19; Weihbrecht Dep. 141:17, 23).

### B. Procedural History

---

[8] Exhibit "40" refers to Hospital Policy No. 60.2.

On March 28, 2011, Carmen Attansio,[9] Lynn Marie Potoski, and Denise Gaiteri filed a collective action complaint against Community Health Systems, Inc., WVHCS, and the Hospital, alleging they were deprived overtime pay for missed meal breaks and uniform maintenance in violation of the Fair Labor Standards Act ("FLSA"). (*See* Doc. 1 *generally*). I granted Defendants' Motion to Dismiss on October 20, 2011 and allowed Plaintiffs the opportunity to amend their complaint. (Doc. 13, 23). Plaintiffs filed an amended collective action complaint on November 7, 2011 against the same defendants. (Doc. 24). Defendants' Motion to Dismiss was granted as to then-defendant Community Health Systems, Inc. and denied on all other grounds. (Doc. 36, Doc. 37). Thereafter, the parties stipulated Plaintiffs would no longer pursue a claim against Community Health Systems, Inc. (Doc. 39).

Plaintiffs' Motion for Order Authorizing Notice to Similarly Situated Persons Pursuant to 29 U.S.C. § 216(b) was granted on December 19, 2013. (Doc. 71, Doc. 72). Following a number of motions concerning untimely opt-in plaintiffs, the parties stipulated which opt-in plaintiffs would be considered part of the "Meal Break"[10] and "Uniform"[11] classes. (Docs. 164, 166, 169, 170, 171, 175, 180). On September 21, 2018, the parties agreed to submit to me the question of "whether there is a genuine issue of fact that the Hospital's alleged violations of the Fair Labor Standards Act were 'willful' such that the applicable limitations period should be three years (instead of only two) under 29 U.S.C. § 255(a)" in a motion for summary judgment. (Doc. 188

---

[9] Carmen Attansio is no longer a party to this action.

[10] The "Meal Break" class is defined as "all persons who have worked as full-time, hourly employees at Wilkes-Barre Hospital, First Hospital, and CHOICES . . . during any workweek in the three years preceding this Court's conditional certification ruling." (Doc. 71 at 2 (quoting Doc. 62 at 3 n.2)).

[11] The "Uniform" class is defined as "all persons who have worked as hourly uniformed employees at Wilkes-Barre Hospital . . . during any workweek in the three years preceding this Court's conditional certification ruling." (Doc. 71 at 2 (quoting Doc. 60 at 7 n.5)).

7

at 1). On November 9, 2018, Defendants filed a Motion for Summary Judgment on this issue. This Motion has been fully briefed and is now ripe for review.

## II. Legal Standard

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Wright v. Corning*, 679 F.3d 101, 103 (3d Cir. 2012) (quoting *Orsatti v. N.J. State Police*, 71 F.3d 480, 482 (3d Cir. 1995)). A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. *See Edelman v. Comm'r of Soc. Sec.*, 83 F.3d 68, 70 (3d Cir. 1996). Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one. *Anderson*, 477 U.S. at 248 An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id*. Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law. *See Howard Hess Dental Labs., Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 251 (3d Cir. 2010). The moving party may present its own evidence or, where the non-moving party has the burden of proof, simply point out to the court that "the non-moving party has failed to make a sufficient showing on an essential element of her case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"When considering whether there exist genuine issues of material fact, the court is required to examine the evidence of record in the light most favorable to the party

8

opposing summary judgment, and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). Once the moving party has satisfied its initial burden, the burden shifts to the non-moving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. *Anderson*, 477 U.S. at 256-57. The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

"To prevail on a motion for summary judgment, the non-moving party must show specific facts such that a reasonable jury could find in that party's favor, thereby establishing a genuine issue of fact for trial." *Galli v. New Jersey Meadowlands Comm'n*, 490 F.3d 265, 270 (3d Cir. 2007) (citing Fed. R. Civ. P. 56(e)). "While the evidence that the non-moving party presents may be either direct or circumstantial, and need not be as great as a preponderance, the evidence must be more than a scintilla." *Id.* (quoting *Hugh v. Butler County Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005)). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

### III. Discussion

Defendants move for summary judgment on the basis that the failure to pay overtime wages for the activities discussed above was a not willful violation of the FLSA. The FLSA provides two (2) different statutes of limitation: three (3) years if the violation is willful, and two (2) years if the violation is not willful. 29 U.S.C. § 255(a). An employer willfully violates the FLSA when it "either knew or showed reckless disregard[12] for the matter of whether its conduct was prohibited by statute."

---

[12] "'Reckless disregard . . . involves actual knowledge of a legal requirement, and deliberate disregard of the risk that one is in violation.'" *Hart v. Rick's Cabaret,*

9

*McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133, 108 S. Ct. 1677 (1988). "A plaintiff must put forward at least some evidence of the employer's awareness of a violation of the FLSA overtime mandate." *Souryavong v. Lackawanna Cty.*, 872 F.3d 122, 127 (3d Cir. 2017). "Acting only 'unreasonably' is insufficient—some degree of actual awareness is necessary." *Souryavong v. Lackawanna Cty.*, 872 F.3d 122, 126 (3d Cir. 2017) (citing *McLaughlin*, 486 U.S. at 135 n.13, 108 S. Ct. 1677)). Willful violations of the FLSA often involve "a degree of egregiousness[.]" *Id.* at 127.

### A. Meal Break Class

Defendants contend they are entitled to summary judgment based on Plaintiff's failure to demonstrate Defendants knew or showed reckless disregard for whether their actions amounted to a FLSA violation. Plaintiffs counter that summary judgment should be denied because the evidence reflects a genuine dispute as to whether Defendants knew or showed reckless disregard toward whether Hospital employees paid for all of their meal break work.

In framing their argument, Defendants attack a necessary assumption for addressing the willfulness issue they raise in their Motion for Summary Judgment: that Defendants committed an underlying FLSA violation. Because Defendants moved for summary judgment only on the question of willfulness, I will not address Defendants' arguments concerning whether the meal break exception policy is compliant with the FLSA.[13] To engage with these arguments would blur the issues raised in the Motion.

The evidence, viewed in the light most favorable to Plaintiffs, reflects Defendants had actual knowledge of the legal requirement to pay overtime under

---

*Int'l, Inc.*, 967 F. Supp. 2d 901, 937-38 (S.D.N.Y. 2013) (quoting *Damassia v. Duane Reade, Inc.*, No. 04 Civ. 8819, 2005 WL 1214337, at *3 n.2 (S.D.N.Y. May 20, 2005)).

[13] To be clear, I make no finding as to whether a FLSA violation *actually* occurred; rather, I only *assume*, for purposes of adjudicating this Motion, that a FLSA violation occurred.

10

FLSA. Defendants explicitly acknowledge their specific responsibilities under the FLSA regarding paying employees overtime for meal breaks less than thirty (30) uninterrupted minutes. For instance, Section 3.0 of Hospital Policy D.13, "Break/Meal Periods[,]" states "[a]ll break and meal periods must be in strict compliance with applicable state and federal laws." (Ex. 38 at 1). In this same policy, Defendants acknowledge "[f]ederal law does not mandate break or meal periods. However, for any break or meal period to be unpaid, it must be at least 30 minutes in duration and uninterrupted. This applies to all facilities in all states." *Id.* Hospital Policy D.5 "Workweek/Overtime" also recognizes Defendants' responsibility under the FLSA to pay employees eligible overtime wages. (*See* Ex. 36 at 1 (defining "Overtime" as "[h]ours worked by non-exempt employees in excess of 40 in a workweek that are subject to compensation at a rate of one and one-half times their regular rate in accordance with the Fair Labor Standards Act or other applicable laws. . . .")). Unlike the evidence presented in *Souryavong*, which "only reference[d] 'wage and hour issues' and never mention[ed] the FLSA or any other law—state or federal[,]" the policies in the instant case reflect Defendants' "specific awareness of the legal issue[.]" *Souryavong*, 872 F.3d at 126-127.

In addition to demonstrating Defendants' specific awareness of their responsibilities under the FLSA, Plaintiffs must show Defendants knew or acted with reckless disregard as to whether their conduct was prohibited by the FLSA. Plaintiffs testified they rarely received a full, uninterrupted thirty (30) minute meal break and that they notified their supervisors of this concern. (Admitis Dep. 49:8-9; Bell Dep. 118:12, 120:14-15; Davailus Dep. 36:2-3; Figueroa Dep. 41:3, 43:19; Gaiteri Dep. 76:21-24; Guilford Dep. 43:20; Hilaire Dep. 257:18-19, 259:18-19; Howell Dep. 43:14-15, 53:18, 55:6-12, 68:15, 80:9-10; Jordan Dep. 68:24-69:20; Kadtke Dep. 59:6-10, 64:8; Kelsey Dep. 58:13-25; Natishan Dep. 86:10-15; Orleski Dep. 25:2-5, 36:4; Sciandra Dep. 39:1, 45:17-23; Weihbrecht Dep. 47:14-15, 56:6-8; Williamson Dep. 51:4-10, 54:18-24; Wilson Dep. 36:15). Simply permitting employees to work during

their meal breaks would not, on its own, form the basis for a FLSA violation. However, the record reflects a genuine dispute of material fact as to whether Defendants knew or showed reckless disregard for whether hospital employees were paid for all of their meal break work in violation of the FLSA.

Viewed in the light most favorable to the non-moving party, the evidence shows Plaintiffs reported their concerns about missing their meal breaks to their supervisors and management, and some Plaintiffs even reported their concerns over not being compensated for their missed meal breaks to their supervisors and Human Resources.[14] (Admitis Dep. 63:19-22; Bell Dep. 57:21-25; Davailus Dep. 26:12-16, 27:10-16; Eichorn Dep. 28:13-24, 29:5, 10; Figueroa Dep. 54:19-24; Gaiteri Dep. 56:16-24; Guilford Dep. 40:16-18, 41:7-8, 64:13, 17; Hilaire Dep. 37:21-39:6, 46:25:47:7, 105:406, 115:21-22, 117:6-8, 153:21-25, 154:11-21, 177:21-178:3, 179:3-12; Howell Dep. 55:17-21, 96:6-15, 114:7; Jordan Dep. 56:12-23, 125:17-19; Kadtke Dep. 73:14-19, 118:23-25; Kelsey Dep. 66:6-23, 69:4-5, 71:13-16, 72:17-73:3, 94:6-9; Natishan Dep. 77:22-78:5, 89:12-15; Orleski Dep. 60:17-61:4, 62:5-8; Potoski Dep. 123:24-124:17, 133:1-5, 191:21-192:4; Sciandra Dep. 48:21-49:2, 51:16-17, 53:18-19, 59:23-61:4, 73:18-24, 107:18-24; Weihbrecht Dep. 54:14; Williamson Dep. 58:14-59:1). Plaintiffs' supervisors were aware of persistent staffing problems in their departments, both from their own observations and Plaintiffs' reports, and did not take corrective action. (Admitis Dep. 63:19-22; Bell Dep. 55:15-23; Davailus Dep. 22:23-25, 26:5-7; Eichorn Dep. 29:24; Figueroa Dep. 43:3; Guilford Dep. 34:4-7, 41:10-13; Hilaire Dep. 37:21-39:6, 46:25-48:6, 51:12-18, 59:1-4; Jordan Dep. 83:24; Kadtke Dep. 67:11-15, 102:9-5, 112:22-24; Kelsey Dep. 17:6, 32:22-24; Natishan Dep. 78:10-14; Orleski

---

[14] The evidence offered by the parties reveals a dispute as to whether Lisa Goble, former Chief Human Resources Officer, was made aware of the frequency at which employees worked through meal breaks as well as whether employees could actually be compensated for these missed meal breaks. (*Compare* Goble Decl. ¶¶ 13, 14 *with* Natishan Dep. 92:8-9; Potoski Dep. 122:15-24).

Dep. 57:1-4, 62:5-8; Potoski Dep. 106:9-107:12, 113:2-16; Sciandra Dep. 66:14-19; Weihbrecht Dep. 42:16-20, 50:23-25). A number of Plaintiffs testified their supervisors saw them eating in nursing areas against Hospital policy, including standing and eating while watching patient monitors and eating at the nursing station while charting. (Admitis Dep. 93:4-15; Gaiteri Dep. 126:1-10; Guilford Dep. 34:21-24; Hilaire Dep. 166:10-20; Jordan Dep. 63:8; Potoski Dep. 87:14-22, 126:7-19, 129:11-13, 192:8-11; Sciandra Dep. 41:4-8; Weihbrecht Dep. 114:6-13). The record also reflects Plaintiffs only formally reported some of their interrupted or missed meal breaks through hospital and department-specific procedures. (Admitis Dep. 86:9-14; Eichorn Dep. 49:4, 51:9-11; Gaiteri Dep. 71:23-24, 72:1-3; Guilford Dep. 39:5-6; Hilaire Dep. 193:2-7; Jordan Dep. 57:7, 106:23-107:3; Kadtke Dep. 69:4-22; Potoski Dep. 123:3-4; Sciandra Dep. 105:4-7, 120:9-12; Wilson Dep. 48:2-12). Plaintiffs described having been expressly discouraged by supervisors from reporting missed or interrupted meal breaks in addition to working in an environment that intimidated them from reporting, leading some to believe if they were able to eat something, they should not submit meal break exception reports. (Admitis Dep. 54:7-8, 78:8-13; Bell Dep. 61:5-14; Davailus Dep. 45:11-25; Eichorn Dep. 41:14-15, 52:2-5; Gaiteri Dep. 72:12-13, 143:1-2, 145:15-21; Guilford Dep. 42:13-15; Hilaire Dep. 120:16-121:20, 123:21-24, 131:22-132:2, 136:10, 204:4-14; Jordan Dep. 83:14-84:24, 86:16-22, 87:13-16, 113:3-21, 115:5-10, 118:9-22; Kadtke Dep. 70:4-17, 103:17-19, 108:22-109:6, 111:9-13; Kelsey Dep. 66:6-7; Natishan Dep. 90:2-9, 92:8-9; Potoski Dep. 113:2-114:21, 122:15-24, 123:17-10, 133:1-5; Sciandra Dep. 36:21-24, 62:18-19, 66:10-19, 82:12-16, 109:8-11, 112:21-113:3; Weihbrecht Dep. 96:10-12; Williamson Dep. 61:16-19; Wilson Dep. 44:1-45:4, 57:15-18, 70:10-13). Additionally, some of the Plaintiffs did not understand they could submit exception reports for interrupted breaks. (Admitis Dep. 63:3-8; Eichorn Dep. 49:20, 22; Guilford Dep. 40:1-2; Howell Dep. 79:1-21; Jordan Dep. 72:8-14, 77:23-78:1, 89:6-12, 108:23; Kadtke Dep. 60:1-4; Natishan Dep. 112:9-14, 153:21-154:8; Orleski Dep, 43:3-4). Lisa Goble, former Chief Human

13

Resources Officer stated that employees were required to acknowledge they were "aware of and understand[] Hospital policy regarding reimbursement of missed or shortened meal periods" but that "[e]ach department formulates its own exception reporting procedure" that is explained to the employees through their managers. Goble Decl. ¶¶ 7, 17. However, a number of Plaintiffs testified that they were informed of the Hospital's meal period reimbursement policy only through their orientation materials, an annual acknowledgment form, and forms available on the Hospital's intranet for optional viewing. (Bell Dep. 90:12-24; Davailus Dep. 53:6, 12; Figueroa Dep. 46:13-14; Gaiteri Dep. 124:7-10; Hilaire Dep. 100:10-13, 111:6-10, 113:12-16; Howell Dep. 82:17, 24; Jordan Dep. 73:11-20, 75:7; Kadtke Dep. 78:4-6; Kelsey Dep. 38:4; Orleski Dep. 37:2-5, 43:23-44:7, 58:5-11; Sciandra Dep. 88:18, 98:20-24, 117:1-9).

As to egregiousness, Defendants estimate, based on the number of meal break exception reports filed by the entire Meal Break Class, that the average class member filed thirty-three (33) reports over the relevant time period. (Doc. 190, Def.'s Br. at 19; Goble Decl. ¶ 10). Coupled with Plaintiffs' testimony as to the frequency of their missed or interrupted meal breaks, this figure reveals Plaintiffs, on average, formally reported less than one-quarter of their total missed or interrupted meal breaks. Even assuming Plaintiffs were in fact paid for all formally reported missed or interrupted meal breaks, the record supports an inference that the majority of Plaintiffs' working meal time—which was brought to the attention of their supervisors and management but not formally reported—went unpaid over the course of several years. This, combined with Plaintiffs' repeated complaints to supervisors and management, is on par with the level of egregiousness presented in the cases cited in *Souryavong*.

For these reasons, I find the record presents a genuine dispute of material fact as to willfulness, given that a reasonable jury could conclude Defendants acted with reckless disregard from the evidence discussed above. *See Martin v. Selker Brothers, Inc.*, 949 F.2d 1286, 1296 (3d Cir. 1991) (affirming lower court's finding of reckless

disregard where employer knew payment scheme could violate the FLSA and "continued using it despite concerns and doubts as to its legality"); *Albanese v. Bergen Cty.*, 991 F. Supp. 410, 425 (D.N.J. 1997) (finding willfulness where employer "did not comport with the FLSA's extensive duties" to investigate a potential FLSA violation); *but see United States v. Perkins*, 871 F. Supp. 797, 801 (M.D. Pa. 1995) (concluding FLSA violation was not willful because "Defendants reasonably believed, based on the existing law, that the employees were *not entitled to compensation* for their meal breaks") (emphasis added). Summary judgment will therefore be denied as to the Meal Break Class.

### B. Uniform Class

While the parties did not address the Uniform Class in as much depth, a reasonable jury would be unable to conclude Defendants' failure to compensate Plaintiffs for time spent cleaning and maintaining their uniforms was willful. Plaintiffs presented no evidence showing Defendants were aware of any legal obligation to compensate Plaintiffs for their uniform maintenance. Moreover, the evidence shows Plaintiffs never even raised this issue with their supervisors or management. (*E.g.*, Adomitis Dep. 106:13; Bell Dep. 139:11; Davailus Dep. 89:18; Gaiteri Dep. 115:18; Hilaire Dep. 222:21; Jordan Dep. 143:17, 145:12-14; Kadtke Dep. 149:3-7; Kelsey Dep. 121:19-22; Natishan Dep. 130:2-4; Orleski Dep. 73:5-10; Sciandra Dep. 143:10-19; Weihbrecht Dep. 141:17, 23). Summary judgment will therefore be granted as to the Uniform Class.

## IV. Conclusion

For the above stated reasons, summary judgment will be **DENIED** as to the Meal Break Class and **GRANTED** as to the Uniform Class.

An appropriate order follows.

March 15, 2019  /s/ A. Richard Caputo
Date  A. Richard Caputo
  United States District Judge