# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LYNN MARIE POTOSKI and DENISE GAITERI, on behalf of themselves and others similarly situated,<br><br>    Plaintiffs,<br><br>        v.<br><br>WYOMING VALLEY HEALTH CARE SYSTEM and WILKES-BARRE GENERAL HOSPITAL,<br><br>    Defendants. | NO. 3:11-CV-00582<br><br>(JUDGE CAPUTO) |

## **MEMORANDUM**

Presently before me is a Joint Motion and Incorporated Memorandum of Law for Approval of the Parties' FLSA Settlement Including Attorneys' Fees, Costs and Service Awards. (Doc. 199). Because the parties have agreed to a fair and reasonable settlement to end a *bona fide* dispute which does not frustrate the purposes of the Fair Labor Standards Act, the Joint Motion will be granted.

## **I. Background**

Plaintiffs Carmen Attanasio,[1] Lynn Marie Potoski, and Denise Gaiteri (collectively "Plaintiffs") commenced this collective action on March 28, 2011 pursuant to the Fair Labor Standards Act ("FLSA") on behalf of themselves and all others similarly situated. (*See* Doc. 1). The Complaint alleges that Wyoming Valley Health Care System and Wilkes-Barre General Hospital (collectively "Defendants") violated FLSA by failing to pay class member employees for work performed during meal breaks and for proper uniform maintenance. (*See id.*).

---

[1] Carmen Attansio is no longer a party to the suit. (*See* Doc. 197). Another party named in the original complaint, Community Health Systems, has also been dismissed from the action. (*See* Doc. 37).

Following initial dismissal of the action (Doc. 23), the Plaintiffs filed an amended complaint on November 7, 2011. (Doc. 24). Over the course of the next eight years, the parties litigated and I resolved many issues surrounding this case including class notice and certification requirements (*see* Doc. 71, 72, 75, 111, 149) as well who could properly be considered class members (*see* Docs. 164, 166, 172-74, 176, 180). The Defendants moved for Summary Judgment on both claims on November 9, 2018. (*See* Doc. 189). This Motion was granted as to the uniform maintenance class, but denied as to the meal break class. (*See* Docs. 194, 195)

The parties then indicated their intent to settle the case as to the remaining plaintiffs and claims on March 28, 2019. (*See* Doc. 196). Request for an *in camera* review of a settlement agreement was denied on September 4, 2019 (Doc. 198), and on October 9, 2019, the instant Joint Motion was filed. (*See* Doc. 199). The Settlement Agreement ("the Agreement") accompanying this Joint Motion provides for a total maximum payment of $800,000.00, inclusive of all fees and costs, in exchange for the release of claims as defined in the Agreement. (*See* Doc. 199-1 at ¶¶ 1.9, 3.1, 4.1- 4.3). Participating members of the class are to receive a pro-rated portion of the settlement after payment of attorney's fees, costs, and service awards. (*See* Doc. 199-1 at ¶¶ 3.3, 3.4). The fees and costs for counsel are $280,000 and $32,874 respectively, with $469,126 to be distributed to the Plaintiffs, for an average of $3,303.70 per class member. (*Id.*; *see also* Doc. 199 at 14). The remaining $18,000 is for service awards to the named Plaintiffs in the amount of $6,000 per named plaintiff as well as $6,000 for costs to administer the settlement. (*See* 199-1 at ¶¶ 3.2, 3.6; *see also* Doc. 199 at 7). The Agreement further sets forth, *inter alia*, the duties of the settlement administrator, RG/2 Claims Administration LLC ("the Administrator"), the approval of the settlement, the notice to eligible settlement class members, the terms of the payment, the release of claims against the Defendants, and the confidentiality of the agreement. (See *id.*, *generally*). A hearing was held on the Joint Motion on December 16, 2019 and it is ripe for review.

## II. Standard of Review

FLSA was designed to "protect certain groups of the population from substandard wages and excessive hours which endangered the national health and well-being and the free flow of goods in interstate commerce." *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945). Under FLSA, a collective action "may be maintained . . . by any one or more employees for and on behalf of themselves and other employees similarly situated." 29 U.S.C. § 216(b).

To safeguard employee rights, "a majority of courts have held that *bona fide* FLSA disputes may only be settled or compromised through payments made under the supervision of the Secretary of the Department of Labor or by judicial approval of a proposed settlement in an FLSA lawsuit." *Bettger v. Crossmark, Inc.*, 2015 WL 279754, at *3 (M.D. Pa. 2015) (citing, *inter alia*, *Lynn's Food Stores, Inc. v. U.S. ex rel. U.S. Dep't of Labor*, 679 F.2d 1350, 1354 (11th Cir.1982) ("Lynn's Food Stores")). "While the Third Circuit Court of Appeals has not addressed whether parties can settle FLSA actions for unpaid wages without court approval, district courts within the Circuit have followed the majority position and assumed that judicial approval is necessary." *Huyett v.Murlin*, 2018 WL 3155795, at *1 (M.D. Pa. 2018); *see also Bettger*, 2015 WL 279754, at *3 (same). A district court "may find a proposed settlement agreement resolves a *bona fide* dispute when it 'reflect[s] a reasonable compromise over issues, such as FLSA coverage or computation of back wages.'" *Brown v. TrueBlue, Inc.*, 2013 WL 5408575, at *1 (M.D. Pa. 2013) (quoting *Lynn's Food Stores*, 679 F.2d at 1354). "If a reviewing court is satisfied that an agreement does in fact decide a *bona fide* dispute, it proceeds in two phases: first, the court assesses whether the agreement is fair and reasonable to the plaintiff employee; second, it determines whether the settlement furthers or 'impermissibly frustrates' the implementation of the FLSA in the workplace." *Bettger*, 2015 WL 279754, at *4 (internal citation omitted).

### III. Discussion

The parties contend that their proposed settlement "'is a fair and reasonable resolution of a *bona fide* dispute over FLSA provisions.'" (Doc. 199 at 1-2, 8) (quoting *Altnor v. Preferred Freezer Services, Inc.*, 197 F.Supp.3d 746, 763 (E.D. Pa. 2016)). First, the parties specifically contend that their dispute is *bona fide* because it involves ongoing contentiousness within the confines of FLSA, *i.e.*, an ongoing dispute over the wages due, if any, for time worked during meal breaks. (*Id*. at 8-12). Second, the parties contend that the Agreement is fair and reasonable because it allows the Plaintiffs to be compensated in the face of ongoing litigation costs and legal uncertainty as to the outcome of the claims. (*Id*. at 12-15). The parties further contend that the service awards to the named Plaintiffs and the proposed attorney's fees and costs are reasonable. (*Id*. at 12-21 (citing *Crevatas v. Smith Mgmt. & Consulting*, LLC, 2017 WL 1078174, at *5 (M.D Pa. 2017) (holding that attorney's fees in the range of 20% to 45% of gross settlement can be reasonable); *McGee v. Ann's Choice, Inc.*, 2014 WL 2514582, at *3 (E.D. Pa. 2014) (allowing modest "incentive awards" to name plaintiffs for performing valuable services to the class)). Finally, the parties contend that despite its confidentiality clause and release provision, the Agreement does not frustrate the purposes of FLSA because both are narrowly tailored and not overly broad. (*Id*. at 21-24 (citing *Mabry v. Hildebrandt*, 2015 WL 5025810, at *3 (E.D. Pa. 2015) (outlining scope of permissible confidentiality clauses); *Kraus v. PA Fit II, LLC* , 155 F.Supp.3d 516,532-33 (E.D. Pa. 2016) (outlining scope of permissible release provisions)).

**A.** *Bona Fide* **Dispute.**

The parties contend that their settlement resolves a *bona fide* dispute because they actively disagree over the Plaintiffs' rights to the meal break wages and absent the Agreement, the parties will continue to contest liability. (Doc. 199 at 9-12).

A proposed settlement resolves a *bona fide* dispute where its terms "reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute." *Lynn's Food Stores*, 679 F.2d at 1354. "A *bona fide* dispute is one that involves factual issues rather than legal issues such as the statute's

4

coverage and applicability." *Nwogwugwu v. Spring Meadows at Lansdale*, 2017 WL 2215264, at*2 (E.D. Pa. 2017); *see also Creed v. Benco Dental Supply Co.*, 2013 WL 5276109, at *1 (M.D. Pa 2013) (same). As such, the settlement agreement must not amount "to a mere waiver of [Plaintiff's] statutory rights," rather it should "reflect a reasonable compromise" of disputed factual issues." *Lynn's Food Stores*, 679 F.2d at 1354; *see also Bettger*, 2015 WL 279754, at *4 ("An agreement resolves a *bona fide* dispute when there is some doubt as to whether the plaintiff would succeed on the merits at trial.").

The terms of the Agreement here demonstrate that a *bona fide* dispute exists. As stated in the Agreement, the Defendants' position is that they properly compensated their employees as required by FLSA (*see* Doc. 199-1 at ¶ 7.1), while the Plaintiffs' maintain that they are entitled to lost wages. (*See generally* Doc. 24); *see also Nwogwugwu*, 2017 WL 2215264, at *2 (holding that a *bona fide* dispute where defendant denied allegations of wrongdoing and maintained that position throughout litigation and final settlement). These issues would remain contested throughout the litigation. (*See* Doc. 199 at 9-12). The proposed settlement therefore resolves a *bona fide* dispute over whether the Plaintiffs are entitled to certain wages and whether the Defendant should be required to pay them and does so in a way that represents a fair compromise between the parties, *i.e.*, payment and release from claims.

**B.      Fair and Reasonable Settlement.**

The parties further contend that the settlement as a whole is fair and reasonable to the extent it compensates the Plaintiffs for over 50% of their claimed damages, while also avoiding the uncertainty and expense of continued litigation. (Doc. 199 at 13).

"[T]he Third Circuit has not provided FLSA-specific criteria for district courts to use when evaluating the fairness and reasonableness of any proposed settlement agreement." *Brown*, 2013 WL 5408575, at *2. District courts in this Circuit, though, have applied the factors set out by the Third Circuit for approving class action settlements under Federal Rule of Civil Procedure 23. *See Girsh v. Jepsen*, 521 F.2d 153, 157 (3d Cir. 1975); *see also Nwogwugwu*, 2017 WL 2215264, at *2 (applying *Girsh* factors); *Kraus*, 155 F. Supp.

3d at 523 n.3 (same); *Bettger*, 2015 WL 279754, at *7 (same); *Brown*, 2013 WL 5408575, at *2 (same). The *Girsh* factors are as follows:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) stage of the proceedings and the amount of discovery completed; (4) risks of establishing liability; (5) risk of establishing damages; (6) risk of maintaining the class action through the trial; (7) ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Girsh*, 521 F.2d at 157 (citation omitted).

Applying the pertinent *Girsh* factors, the proposed settlement is fair and reasonable. First, if the litigation were to continue, as it likely would given the past eight years of contentiousness, it would be at great expense as the attorney's fee and other costs would continue to accumulate. *Altenbach v. Lube Center, Inc.*, 2013 WL 74251, at *2 (M.D. Pa. 2013) ("[B]y agreeing to a settlement at this time, the parties will avoid the costs of a potentially lengthy and complex trial."). Further, and relating also to third factor, this class just survived summary judgment and would likely next face evidentiary and other pre-trial motions as well as the issue of final certification and any additional discovery. This is to say that the litigation is far enough along that settlement is appropriate, but not so far long that it is clearly near completion. *See Altenbach*, 2013 WL 74251, at *2 ("[C]ounsel for parties have throughly litigated this action, having conducted extensive discovery and fully briefed a dispositive motion, demonstrating an appreciation of the merits and risks of proceeding to trial before negotiating the settlement agreement."). For the second factor, the members of the class opted into this action and agreed to let Class Counsel represent them in these proceedings, including overseeing settlement negotiations. Further, the settlement represents a fair payout for individual class member's claims and class members will

6

receive notice and be fully informed of their right to opt out of the settlement and pursue their actions individually.  (*See* Doc. 199-1 at ¶¶ 1.17, 4.3).

For the fourth and fifth factors, the parties have clearly set forth the challenges that the Plaintiffs would face in establishing their case in this litigation, including proving the level of willfulness the Defendants exhibited towards Plaintiffs in not paying them for work done during meal breaks as well as proving the exact amount of damages each Plaintiff is owed given the lack of records.  (Doc. 199 at 14).  The sixth factor has also been highlighted by counsel in their Joint Motion as the Defendants indicate that absent this Agreement, they would likely challenge final certification of the class.  (*Id*. at 13); *see also Galt v. Eagleville Hospital*, 310 F.Supp.3d 483, 494 (E.D. Pa. 2018) ("[T]he practical and legal risks of decertification would favor settlement in this case.").

Lastly, the final two *Girsh* factors require an assessment of;
> "whether the settlement represents a good value for a weak case or a poor value for a strong case.  The factors test two sides of the same coin: reasonableness in light of the best possible recovery and reasonableness in light of the risks the parties would face if the case went to trial."

*Altnor*, 197 F. Supp. 2d at 763 (quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 538 (3d Cir. 2004)).  Given the value of the proposed settlement and the risks at issue in litigating the action as stated previously, these factors weigh in favor of settlement.  *See Creed*, 2013 WL 5276109, at *4 ("Given the many risks of litigation-including all the imponderable twists and turns that might not become apparent until months or years into the case- this settlement represents more than a reasonable outcome for the Plaintiffs."); *Galt*, 310 F.Supp.3d at 495 ("In light of the risks associated with continued litigation, the Court finds the final two *Girsch* factors weigh in favor of settlement.").  The seventh factor has not been squarely addressed and does not need to be in light of the overwhelming weight of the other factors.

Therefore, based on the circumstances surrounding the claims, including the risks and costs of litigation, and the fairness of the settlement according to the *Girsch* factors,

approval of the settlement is warranted.

**C.     Attorney's Fees, Costs, and Service Awards**

The parties seek $280,000 in attorney's fees, $32,874 in litigation costs, $6,000 in settlement administration costs, and $12,000 in a service award to be split among the two named Plaintiffs. (Doc. 199 at 15-21). The parties contend that the attorney's fees reflect a standard percentage of the gross recovery which attorneys charge in these cases. (*Id*. at 17-20). The parties further contend that the litigation costs and the settlement administration costs represent reasonable and appropriate costs of this type of litigation and settlement. (*Id*. at 20-21). Finally, the parties contend that the service awards are reasonable considering the Plaintiffs' contribution to the case in bringing it to court and ensuring that it made it to its current stage. (*Id*. at 15-16).

FLSA states that I "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). Two methods can be used to calculate attorney's fees in collective actions: "the lodestar method and the percentage-of-recovery method." *Galt*, 310 F.Supp.3d at 497; *see also Acevedo v. Brightview Landscapes, LLC*, 2017 WL 4354809, at*16 (M.D. Pa. 2017) (same). The Third Circuit tends to favor the percentage-of-recovery method in "wage and hour cases," *see Bredbenner*, 2011 WL 1344745, at * 19, but will often cross-check the percentage award against the lodestar method. *Galt*, 310 F.Supp.3d at 497 (citing *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000)); *see also Acevedo,* 2017 WL 4354809, at *16 ("Third Circuit jurisprudence urges a lodestar cross-check to ensure that the percentage approach does not lead to a fee that represents an extraordinary lodestar multiple.") (internal citations and quotations omitted). "When a district court uses the percentage of recovery method, it 'first calculates the percentage of the total recovery that the proposal would allocate to attorneys['] fees by dividing the amount of the requested fee by the total amount paid out by the defendant; it then inquires whether that percentage is appropriate based on the circumstances of the case.'" *Id*. (quoting *Nichols v. SmithKline Beecham Corp.*, 2005 WL 950616, at *20 (E.D. Pa. 2005). My

reasonableness analysis is guided by seven factors:

> (1) the size of the fund created and the number of the persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

*Gunter*, 223 F.3d at 195 n.1.

"Incentive payments may be approved to compensate class representatives for services they provide and risks they incur during the course of litigation as well as to reward members for the benefit they provide to the class and to the public." *Galt* 310 F.Supp.3d at 496 (awarding $5,000 each to two named plaintiffs for their contributions to the class in bringing their claims to court and assisting in facilitating settlement); *see also Acevedo,* 2017 WL 4354809, at *15 (holding that $5,000 service award was reasonable). Costs of the litigation and payments to settlement administrators are also allowed when agreed to by the parties and when reasonable in light of the complexity of the litigation and the settlement. *Galt*, 310 F.Supp.3d at 499; *see also Acevedo, 2017 WL 4354809, at *14-15, 20* (approving reasonable settlement administration and attorney's costs).

Here, according to the *Gunter* factors, the attorney's fees are reasonable. First, the Third Circuit has awarded fees ranging from 20% to 45% of the settlement value. *See Crevatas*, 2017 WL 1078174, at *5; *Galt*, 310 F.Supp.3d at 497. The present fee is 35% of the settlement value, and is therefore within the standard ranges. (*See* Doc. 199 at 17-18). For the second factor, the attorneys for the Plaintiffs have been responsive to the class, ensuring proper opt-in, and ensuring negotiation of a settlement which would provides adequate payout, all without objection. (*See* Doc. 199-1 at ¶¶ 1.17, 4.3 (mandating Plaintiffs have notice of settlement and ability to opt-out and pursue claims individually)); *see also Acevedo,* 2017 WL 4354809, at *17 *("*[T]here has been no objections to the settlement and no late objectors were present at the final hearing[; t]his is yet another indication that the

resulting settlement is fair and an indication of the work expended by counsel in reaching a fair settlement."). Factors three through six also weigh in favor of granting the award as class counsel has spent more than eight years diligently litigating this complex case and have managed to steer it in the direction of a reasonable settlement despite the ongoing disputes between the parties and despite the possibility of the class recovering nothing. *See Galt*, 310 F.Supp.3d at 497 - 98 (recognizing contentiousness of parties and complexity of case when awarding fees); *see also Acevedo, 2017 WL 4354809, at \*17-18 (*recognizing that significant time and effort contributions to case and settlement weighed in favor of awarding fees). Finally, the size of the overall recovery here, and therefore the size of the percentage based fee award, is smaller than that which has been recovered in similar cases (as to both gross recovery and attorney recovery) and to the extent the gross recovery is similar to other cases, the award is similar . *See, e.g., id*. at 497 (granting $182,000 in attorney's fees on $520,000 gross settlement); *Acevedo, 2017 WL 4354809, at \*18* (granting attorney's fees in the amount of 32% of multimillion dollar gross settlement). Cross-checking the award with the lodestar for this case, the Plaintiff's request of $280,000 is much less than their lodestar, which after accounting for the years of time spent on this case, amounts to over $700,000 in fees. (Doc. 199 at 19-20; *see also* 199-1 Ex. 2 (Declaration of James B. Zouras in Support of Joint Motion for Fees and Costs)). Moreover, there have been no objections to the service awards for the named Plaintiffs, the costs of the litigation, and the payment to the Administrator, all of which are within previously awarded ranges, are well-documented, and are reasonable. *See Galt*, 310 F.Supp.3d at 496, 499 (holding attorney's costs and awards reasonable especially in absence any objections by parties or claimants).

**D.    Frustration of FLSA.**

Finally, the parties contend that the Agreement furthers FLSA's implementation in the workplace because "FLSA settlements promote the FLSA's purpose so long as they avoid restrictive confidentiality clauses and impermissibly broad release provisions." (Doc. 199 at 122 (citing *Mabry*, 2015 WL 5025810, at * 3; *Kraus*, 155 F.Supp.3d at 532-33)). As

such, the parties here contend that the confidentiality clause and the release provision in the Agreement are narrowly tailored and not overbroad so as to frustrate FLSA's purpose. (Doc. 199 at 22-23),

Because the settlement is fair and reasonable, consideration must be given to whether the agreement frustrates the implementation of the FLSA. *See, e.g.*, *Kraus*, 155 F. Supp. 3d at 532; *Bettger*, 2015 WL 279754, at *8; *Brown*, 2013 WL 5408575, at *3. To this end, while "there is a strong presumption against confidentiality clauses in FLSA wage-settlement agreement[s]," *Haley v. Bell-Mark Technologies Corporation*, 2019 WL 1925116, at *6 (M.D. Pa. 2019), narrowly crafted confidentiality clauses have been approved. *See e.g., McGee*, 2014 WL 2514582, at *3. Courts similarly avoid approving a settlement which has a broad waiver provision, but will do so when it is not overly broad. *See, e.g., Nwogwugwu*, 2017 WL 2215264, at *3 (finding that settlement did not frustrate FLSA where it did not include a broad waiver or confidentiality provision).

Here, the agreement does not include broad waiver provisions (limiting release to FLSA and state wage claims which were or could have been asserted in this case) and the confidentiality provision is limited to comments to the media and public statements, while also not carrying any sanctions for its violation. (Doc. 199 at 21-24; Doc. 199-1 at ¶¶ 4.1-4.4, 6.1); *see also Nwogwugwu*, 2017 WL 2215264, at *3 (finding that settlement did not frustrate the FLSA where it did not include a broad waiver or confidentiality provisions); *Diclemente v. Adams Outdoor Advertising, Inc.*, 2016 WL 3654462, at *4 (M.D. Pa. 2016) (approving settlement agreement with a confidentiality provision allowing for disclosure of the case's conclusion without any allowable sanctions or retaliation for breach). The proposed settlement therefore does not frustrate the implementation of FLSA.

## IV. Conclusion

Because the Agreement represents a fair and reasonable settlement resolving a *bona fide* dispute without frustrating the purpose of FLSA, the Joint Motion for settlement, fees, costs, and service awards will be granted.

An appropriate order follows.

January 14, 2020  /s/ A. Richard Caputo
Date  A. Richard Caputo
United States District Judge